[No. 12937-3-III. Division Three. February 9, 1995.]

PATRICIA E. MARQUIS, *Appellant*, v. THE CITY OF
SPOKANE, ET AL, *Respondents.*

*J. Scott Miller* and *Johnson, McLean, Riccelli*, for appellant.

*Thomas F. Kingen* and *Perkins Coie*, for respondents.

MUNSON, J. — Patricia Marquis appeals the trial court summary judgment dismissing her claim for sex discrimination. She contends the court erred in determining an independent contractor has no cause of action for sex discrimination under RCW 49.60.030, and alternatively the court erred in failing to consider evidence she was an employee. The City of Spokane cross-appeals, contending the court erred in ruling Ms. Marquis presented sufficient evidence to create genuine issues of material fact as to whether employment discrimination occurred.

The City owns three municipal golf courses, Esmeralda, Indian Canyon, and Downriver. In 1986, the City needed a new golf pro for the Downriver course. Frank McCoy, director of parks and recreation, recruited Ms. Marquis and, after she had been interviewed, chose her as the person to negotiate the contract for operating Downriver.

In December 1986, Ms. Marquis signed a 3-year contract with the City. She was to operate the golf course, clubhouse, restaurant and coffee shop, pro shop and practice range, providing staff at her own expense. Her compensation was a percentage of various receipts collected from the operation of

the driving range and clubhouse facilities and collection of green fees. She was told if she did a good job the contract would be renewed.

After she had signed the contract, Ms. Marquis discovered the golf professionals at Esmeralda and Indian Canyon received substantially greater compensation.[1] When she brought the apparent discrepancy to the attention of the golf committee, the chairman, Mark Virden, told her "If you can't stand the heat, get out of the kitchen." Michael Stone, the park department's golf manager, asked her why she was worried about pay when she was married to a doctor.

During her tenure at Downriver, Ms. Marquis received official reprimands and frequent criticisms which she believed were unwarranted. On one occasion, the boy who had been hired to pick up balls on the driving range failed to show up for work and Ms. Marquis asked her father to help out. Mr. Stone sent her a letter of reprimand citing a provision in the contract prohibiting the employment of family members. Mr. Warner, the golf professional at Esmeralda, employed his children at Esmeralda and was not reprimanded.

The usual practice at all three golf courses was to obtain a check for the green fees when making a reservation for a tournament, to hold the check until the tournament, and then to ring up the check and deposit it. On one occasion, when Ms. Marquis was out of town at a golf tournament, the cashier mistakenly deposited such a check believing it had already been rung up. Ms. Marquis was reprimanded for this error.

Mr. Stone and Mr. McCoy sent her a letter of reprimand alleging her assistant professional had given a golfer permission to take liquor onto the course although the profes-

---

[1]Ms. Marquis has provided an affidavit prepared by a financial planner who reviewed the contracts and financial records and determined between 1987 and 89, Gary Lindeblad, the golf professional at Indian Canyon, received an average $102,363; Mr. Warner at Esmeralda received an average of $76,902; and Ms. Marquis received an average of $64,716. The City provided an affidavit from a park department accountant which shows the City's payments to Mr. Lindeblad averaged 58,057; payments to Mr. Warner averaged $110,515; and payments to Ms. Marquis averaged $97,346.

sional and the golfer both denied the allegation. Mr. Stone repeatedly told her she should not have hired a female first assistant because it did not look right and she should hire a man.

Mr. Stone telephoned Ms. Marquis on a weekly basis with various criticisms, such as her failure to have two employees behind the counter in the pro shop.

Ms. Marquis and her attorney met with Mr. McCoy and Mr. Stone in January 1990 to negotiate a new contract. Mr. McCoy told her the City wanted to have a maximum contract of 1 year because they were not satisfied with her performance. They supported their characterization with allegations Ms. Marquis did not spend enough time at the course, the facilities were not always clean and some of her staff were unprofessional. The criticisms were essentially subjective. Ms. Marquis terminated negotiations and her contract expired on December 31, 1989.

Ms. Marquis commenced the present action in March 1991. She alleged the City's actions constituted sex discrimination in violation of federal law, 42 U.S.C. § 2000e, and in violation of state law, RCW 49.60.030.

The City moved for summary judgment claiming Ms. Marquis was an independent contractor and therefore lacked standing to bring an action under the federal law; she failed to exhaust remedies applicable under the federal law; and she failed to present evidence supporting each element of her claim. On October 12, 1992, the court dismissed the claim based on federal law but ruled there were genuine issues of fact as to whether the City discriminated against Ms. Marquis.

The City filed a second motion for summary judgment arguing RCW 49.60.030 does not prohibit sex discrimination against independent contractors. The court agreed and on November 20, 1992, filed an order dismissing the sex discrimination claim. Ms. Marquis moved for reconsideration arguing RCW 49.60.030 applies to independent contractors like her who are treated as employees. The motion was denied.

## Ms. Marquis' Appeal

Ms. Marquis contends the trial court erred in holding RCW 49.60.030 does not protect independent contractors from discrimination. The parties have cited no cases directly addressing whether Washington extends protection to independent contractors, nor have we found any.

■ Ms. Marquis' complaint alleged violation of RCW 49.60.030. Under that statute the right to be free from discrimination because of sex includes but is not limited to obtaining employment,[2] using public facilities, and engaging in real estate, insurance and credit transactions. RCW 49.60.030(1). The statutory list, by its own terms, is not exclusive, and can reasonably be interpreted to incorporate other rights recognized by federal law, including the contract rights protected by 42 U.S.C. § 1981.

Our courts have used federal law interpreting Title VII, 42 U.S.C. § 2000e to construe employment discrimination provisions of RCW 49.60. *See Xieng v. Peoples Nat'l Bank*, 120 Wn.2d 512, 844 P.2d 389 (1993); *Allison v. Housing Auth.*, 118 Wn.2d 79, 821 P.2d 34 (1991). Federal courts have held independent contractors are not covered by Title VII employee protection.[3] *Knight v. United Farm Bur. Mut. Ins. Co.*, 950 F.2d 377 (7th Cir. 1991) (insurance agent has no claim against insurance company); *Mitchell v. Frank R. Howard Mem. Hosp.*, 853 F.2d 762 (9th Cir. 1988), *cert. denied*, 489 U.S. 1013 (1989). However, federal law also prohibits discrimination in the making of private contracts, including contracts for the employment of independent contractors. 42 U.S.C. § 1981.[4] *Patterson v. McLean Credit Union*, 491 U.S.

---

[2]RCW 49.60.180 contains an express prohibition against employment discrimination based on age, sex, marital status, race, creed, color, etc. Ms. Marquis does not claim violation of the employment protection of RCW 49.60.180.

[3]An individual has been permitted to sue someone other than an employer under circumstances where the defendant's actions interfered with the plaintiff's employment by a third party. *Doe v. St. Joseph's Hosp.*, 788 F.2d 411 (7th Cir. 1986) (hospital interfered with physician's employment opportunity with patients); *Sibley Mem. Hosp. v. Wilson*, 488 F.2d 1338 (D.C. Cir. 1973); *Puntolillo v. New Hampshire Racing Comm'n*, 375 F. Supp. 1089 (D. N.H. 1974).

[4]Federal civil rights law is not restricted to the subject of employment. In addition to broad protection of civil rights afforded by 42 U.S.C. § 1983, federal

164, 177, 105 L. Ed. 2d 132, 109 S. Ct. 2363 (1989); *Gonzalez v. Home Ins. Co.*, 909 F.2d 716 (2d Cir. 1990).

■ 42 U.S.C. § 1981 is derived from the Civil Rights Act of 1866. *Scott v. Eversole Mortuary*, 522 F.2d 1110, 1113 (9th Cir. 1975). Based on legislative history it has been construed to apply to private as well as public discrimination, but to prohibit only racial discrimination, not sex discrimination. *Scott*, at 1113; *Barnes v. Colonial Life & Accident Ins. Co.*, 818 F. Supp. 978, 982 (N.D. Tex. 1993). Because Washington's Const. art. 31, § 1 (amend. 61) prohibits sex discrimination, the federal statute's limitation to race discrimination is inapplicable to construing this state's law. *See Southwest Wash. Chapter, Nat'l Elec. Contractors Ass'n v. Pierce Cy.*, 100 Wn.2d 109, 667 P.2d 1092 (1983). RCW 49.60.030 creates a cause of action for independent contractors based on sex discrimination in the making of contracts.

■ Cases relating to contract discrimination under 42 U.S.C. § 1981 illustrate the elements of a claim for discrimination in the making of a contract. *See Patterson*, 491 U.S. at 177; *Gonzalez*. Refusal, based on race, to enter into a contract with someone, or an offer to make a contract only on discriminatory terms, is prohibited by 42 U.S.C. § 1981. *Patterson*, 491 U.S. at 177.[5] Refusal to promote is actionable if it amounts to a refusal to enter a new contract. *Patterson*, 491 U.S. at 185. Evidence a member of a protected class applied for a position, was qualified, was not given the position, and the position was given to a person who is not a member of a protected class creates an

law prohibits racial discrimination in legal proceedings, 42 U.S.C. § 1981, and in real property transactions, 42 U.S.C. § 1982. *See Scott v. Eversole Mortuary*, 522 F.2d 1110 (9th Cir. 1975). Federal law also prohibits discriminatory practices in public accommodation, use of public facilities, public education, access to federally assisted programs, and voter registration, 42 U.S.C. §§ 2000a, 2000d, 2000f.

[5]*Patterson* held former 42 U.S.C. § 1981 did not apply to conduct occurring after the employment relationship was established. The statute was amended by the Civil Rights Act of 1991 to include performance, modification and termination of contracts. Pub. L. No. 102-166 Title 1, § 101, 105 Stat. 1071 (1991). The amendment has not been applied retroactively. *See Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 128 L. Ed. 2d 274, 114 S. Ct. 1510 (1994).

inference of discrimination. *Patterson*, 491 U.S. at 186. Contract conditions which make performance more onerous and less lucrative than the contracts given to nonminority contractors may be discriminatory conditions which constitute an offer to make a contract only on discriminatory terms. *Gonzalez*, at 720.

Ms. Marquis presented evidence of sex discrimination in the making of the contract in 1987. Her contract with the City differed from the contracts of the two male golf professionals in several respects, the most significant of which were the provisions relating to green fees. Under Ms. Marquis' 1987 contract, she was to receive 3 percent of the first $100,000, 5 percent of the next $100,000, and 10 percent of green fees over $200,000 earned at Downriver. Gary Lindeblad at Indian Canyon received 2 percent of the first $100,000, 10 percent of the next $50,000 and 20 percent of all fees over $150,000. In 1987, Downriver generated $290,501 in green fees, earning Ms. Marquis $17,677. That same year, Indian Canyon's $292,254 green fees earned Mr. Lindeblad $35,979. Thus, under the disparate terms of their contracts, nearly identical total green fees at the two golf courses resulted in a difference of $18,302 ($35,979–$17,677) income to their respective professionals. In 1987, Esmeralda generated green fees of $373,859, earning Mr. Warner a disproportionately greater payment of $26,237. During the period of 1987 through 1989, Ms. Marquis' income averaged $64,716, while her male counterparts averaged $76,902 and $102,363. Ms. Marquis presented evidence her contract contained conditions which made performance more onerous and less lucrative than the contracts given to the men and thus the contract contained discriminatory conditions. *See Gonzalez*, at 718, 720.

The City presented evidence the contract differences were based on differences in the qualifications of the different golf professionals and the work involved in running the different golf courses, *i.e.*, evidence the contract differences were based on legitimate, nondiscriminatory reasons. *See Patterson*, 491 U.S. at 187. The parties' evidence creates a

genuine issue of fact as to whether the City offered to contract only on discriminatory terms. Evidence of discrimination and harassment in the performance of the contract could be considered by the trier of fact in resolving this issue. *Patterson*, 491 U.S. at 188.

Ms. Marquis also presented evidence the City refused to enter into a second contract except on discriminatory terms. In 1990, the City offered Ms. Marquis a 1-year renewal contract. During negotiations, Mr. McCoy said the reason for the shorter contract was that the park board was dissatisfied with Ms. Marquis' performance. The City's records disclose golf revenue from Downriver increased 38.07 percent during Ms. Marquis' tenure, while during the same time golf revenue from Esmeralda increased only 24.55 percent, and revenue of Indian Canyon increased 13.91 percent. In 1988, Mr. Lindeblad had been given a 5-year contract for Indian Canyon. Ms. Marquis' successor at Downriver received a contract for 2 years 10 months.[6] The City also sought changes from the original contract which would make it easier for the City to terminate the contract and to prohibit Ms. Marquis from hiring family members altogether. The evidence is sufficient to create an issue of fact as to whether, in 1990, the City again offered to contract only on discriminatory terms.

Dismissal of Ms. Marquis' claim for sex discrimination based on her status as an independent contractor was error.

Ms. Marquis also contends there are genuine issues of fact as to whether she was entitled to protection under RCW 49.60.030 as an employee. The City argues the issue was not timely raised because she waited to claim she was an employee until the motion for reconsideration of the order granting summary judgment.

 Ms. Marquis alleged in her complaint that she was an independent contractor. She did not specifically allege, with respect to the claim for sex discrimination, that she was an employee. Compare *Mitchell v. Frank R. Howard Mem. Hosp.,*

---

[6]The successor's contract also provided for greater remuneration than Ms. Marquis had received.

*supra* at 766 n.7. She did not seek to amend her complaint to allege she was an employee. The issue of whether Ms. Marquis was an employee was never before the court and the court properly declined to rule on it. *See Molloy v. Bellevue*, 71 Wn. App. 382, 386-87, 859 P.2d 613 (1993), *review denied*, 123 Wn.2d 1024 (1994).

### CITY'S APPEAL

The City contends the trial court erred in denying its motion for summary judgment on the issue of whether there is a factual basis for Ms. Marquis' employment discrimination claim. Because we hold Ms. Marquis has failed to allege a cause of action for employment discrimination (RCW 46.60.180), we need not consider whether she presented sufficient evidence to preclude summary judgment on that issue.

### CONSOLIDATED APPEAL

Ms. Marquis appeals the postjudgment order supplementing the record with portions of documents which had not been filed prior to entry of the judgment.

While this appeal was pending, the City discovered portions of the exhibits to three documents which the trial court considered had been misplaced or detached from the copies on file in the trial court and consequently had not been transmitted to this court. The exhibits were cited in the documents filed with the court. The City provided the trial court with a copy of the pleadings, including all the exhibits, separate from the official record copy filed with the clerk.

The City moved the Superior Court to supplement the record to include the missing documents.

Ms. Marquis contends the trial court's order, permitting the City to correct the trial court record by adding documents to the file, was error.

RAP 9.12 requires the trial court to designate the documents which were brought to its attention in entering an order on summary judgment so this court will have before it for review the same record which was considered by the trial court. *Millikan v. Board of Directors*, 92 Wn.2d 213,

595 P.2d 533 (1979); *see American Universal Ins. Co. v. Ranson*, 59 Wn.2d 811, 370 P.2d 867 (1962). Here, there is evidence portions of documents brought to the attention of the trial court, and considered by it, were not transmitted to this court because they were inadvertently or mistakenly not included in the trial court's official record.

CR 60(a) allows the court to correct clerical mistakes in the record even after appellate review has been accepted:

> **Clerical Mistakes.** Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. Such mistakes may be so corrected before review is accepted by an appellate court, and thereafter may be corrected pursuant to RAP 7.2(e).

The permission of the appellate court must be obtained before formal entry of the trial court's order only if the trial court's ruling changes the decision which has been appealed. RAP 7.2(e).

The trial court determined omission of the missing documents arose from oversight or omission and, on motion of the City, corrected the clerical mistake by permitting the record to be supplemented with the omitted documents. The trial court's action was authorized by CR 60(a). The order did not change the decision on the City's motions for summary judgment, and thus permission from this court was not required by RAP 7.2(e). There was no error.

We reverse and remand for trial of Ms. Marquis' claim for sex discrimination in the making of a contract.

THOMPSON, C.J., and SWEENEY, J., concur.

Review granted at 127 Wn.2d 1003 (1995).