922 P.2d 43 (1996)
130 Wash.2d 97
Patricia E. MARQUIS, Respondent,
v.
CITY OF SPOKANE, Michael D. Stone, Frank McCoy; and Does A through Z, inclusive, Petitioners.
No. 62788-6.
Supreme Court of Washington, En Banc.
Argued September 27, 1995.
Decided September 5, 1996.
*45 Perkins Coie, Thomas F. Kingen, James P. McNeill, III, Spokane, for petitioners.
Johnson, McLean, Devlin & Miller, J. Scott Miller, Spokane, for respondent.
*44 GUY, Justice.
The Plaintiff in this sex discrimination case is a professional golfer who was hired under a contract with the City of Spokane to operate one of the City's golf courses. The issue is whether an independent contractor who is discriminated against in the negotiation and performance of a contract for services has a cause of action for discrimination under RCW 49.60, Washington's law against discrimination.
We hold that under the broad protections of RCW 49.60.030, an independent contractor may bring an action for discrimination in the making or performance of a contract for personal services where the alleged discrimination is based on sex, race, creed, color, national origin or disability.

FACTS
In December 1986 Plaintiff Patti Marquis entered into a three-year contract with the City of Spokane to serve as the golf professional at Downriver Golf Course, one of three golf courses owned by the City. The City had solicited proposals from qualified golf professionals for the position and Ms. Marquis *46 was personally recruited for the job by the City's Director of Parks and Recreation. A final contract was not published as a "take it or leave it" offer by the City; instead, golf professionals were invited to submit proposals based on a sample contract provided by the City. Selection of the finalists was made by reviewing the proposed contracts. Ms. Marquis was selected as the City golf committee's first choice to negotiate a final contract.
Under the terms of the contract negotiated between Ms. Marquis and the City, Ms. Marquis had responsibility for operating the golf course, practice range, pro shop, cafe, food services, and clubhouse. Although the terms of the contract provided only for extensions of two additional one-year terms, Ms. Marquis was told during the original contract negotiations that she could expect a long career at Downriver Golf Course and that her contract would be continually renewed so long as she performed her job. The previous golf pro at Downriver had worked as the manager at that golf course for 31 years.
Ms. Marquis' compensation under the contract was primarily based on various percentages of receipts collected from the numerous activities involved in the operation of the golf course. While she was serving as golf professional at Downriver, Ms. Marquis learned that the compensation she was receiving under her contract was different from the compensation of the golf professionalsboth malewho operated the other city-owned golf courses. According to a financial planner who submitted an affidavit in support of Ms. Marquis' position, a review of the contracts of the City's three golf professionals and the various revenues generated by each golf course from 1987 to 1989 showed that Ms. Marquis was paid less than the male golf professionals each yearaveraging about $12,000 less than one of the men and approximately $37,000 less than the other. When she expressed concern regarding the discrepancies in income, the City's golf manager asked why she was worried about it as she was married to a doctor. A member of the City's golf committee responded, "If you can't take the heat, get out of the kitchen."
Ms. Marquis also alleges she was subjected to discriminatory treatment during the course of her tenure at Downriver Golf Course. For example, she claims she was criticized for hiring a woman, rather than a man, as her assistant. She alleges she received weekly telephone calls from the City's golf manager, criticizing her for minor violations of her contract. For example, she was criticized or reprimanded for allowing a dog to be in the parking lot; for having family members help out, without pay, when a regular employee did not show up for work; for not having two employees behind the counter in the pro shop at all times; and for spending too much time in her office. Ms. Marquis alleges that substantially similar conduct by the male golf pros was not criticized and the male golf pros were not similarly reprimanded by the City. She also alleges she was reprimanded for incidents which were demonstrated not to have occurred. For example, the City sent Ms. Marquis a letter of reprimand accusing her and her assistant golf pro of giving a golfer permission to take liquor onto the golf course. The letter was made a part of her file, even though Ms. Marquis, the assistant pro, and the golfer denied that this incident had ever occurred.
Just prior to December 31, 1989, when Ms. Marquis' contract was to expire, negotiations for a new contract began. Revenues at Downriver had increased by 34 percent during the contract period, and Ms. Marquis appeared to have the support of the golfers who used the course. She says she therefore expected to be offered a longer contract during the negotiations. However, based on the reprimands in her file, the City refused to unconditionally renew her contract and, instead, offered a one-year probationary contract. Ms. Marquis states she was not able to accept the reasons for the new contract's restrictions and that she could not continue working under the same conditions. She therefore terminated the negotiations and her contract expired on December 31, 1989.
She then filed this action alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and in violation of this state's law against *47 discrimination, RCW 49.60.[1] Named as defendants in the suit were Frank McCoy, the City's Director of Parks and Recreation, Michael D. Stone, the Spokane Golf and Community Development Manager, and the City of Spokane (referred to herein collectively as the City).
The City filed two motions for summary judgment. In the first, the City argued that the Title VII claim should be dismissed on the ground that Ms. Marquis, as an independent contractor, lacked standing to bring an action under the federal law and, further, that she failed to exhaust administrative remedies that are a prerequisite to bringing a Title VII action. The City also argued that Ms. Marquis had failed to present evidence supporting each element of her discrimination claims. The trial court dismissed the Title VII claims but found Ms. Marquis had established a genuine issue of fact with respect to the existence of sex discrimination under state law and denied the motion with respect to the state claim.
The City's second motion for summary judgment requested dismissal of discrimination claims brought pursuant to RCW 49.60.030(1). The City argued that Washington's law against discrimination does not prohibit discrimination against independent contractors. The trial court agreed and dismissed the discrimination claims.
The Court of Appeals reversed. Marquis v. City of Spokane, 76 Wash.App. 853, 888 P.2d 753 (1995). With respect to Ms. Marquis' appeal, the Court of Appeals held that the prohibition against discrimination in the workplace contained in RCW 49.60.030 was not limited to the employer/employee relationship and could reasonably be interpreted to incorporate other rights recognized by federal law, including contract rights protected by former 42 U.S.C. § 1981 (prohibiting discrimination in the making of contracts on the basis of race).[2] Thus, the court held that RCW 49.60.030 creates a cause of action for independent contractors based on sex discrimination in the making of contracts for personal services. The court also held that Ms. Marquis had presented evidence constituting a prima facie case. Because the City countered with evidence that the contract differences were based on legitimate nondiscriminatory reasons, a genuine issue of fact was created, making summary judgment improper.
The City petitioned for review and this court agreed to review the issues presented by both parties.

ISSUES
1. Does an independent contractor who claims she was treated unfairly in the negotiation and performance of a contract for personal services have a cause of action for sex discrimination under RCW 49.60.030?
2. Did the Plaintiff present sufficient evidence to establish a prima facie case of discrimination?

ANALYSIS
This is an appeal from an order granting summary judgment. Review is therefore de novo and the court engages in the same inquiry as the trial court. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982); Hiatt v. Walker Chevrolet Co., 120 Wash.2d 57, 65, 837 P.2d 618 (1992). That inquiry is whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. Fahn v. Cowlitz County, 93 Wash.2d 368, 373, 610 P.2d 857 (1980). We consider the evidence and the reasonable inferences therefrom in a light most favorable to the nonmoving party. Schaaf v. Highfield, 127 Wash.2d 17, 21, 896 P.2d 665 (1995). If we determine there is a dispute as to any material fact, then summary judgment is improper. Hiatt, 120 Wash.2d at 65, 837 *48 P.2d 618. However, where reasonable minds could reach but one conclusion from the admissible facts in evidence, summary judgment should be granted. CR 56(c); LaMon v. Butler, 112 Wash.2d 193, 199, 770 P.2d 1027, cert. denied, 493 U.S. 814, 110 S.Ct. 61, 107 L.Ed.2d 29 (1989).
In order for a plaintiff alleging discrimination in the workplace to overcome a motion for summary judgment, the worker must do more than express an opinion or make conclusory statements. Grimwood v. University of Puget Sound, Inc., 110 Wash.2d 355, 359-60, 753 P.2d 517 (1988). The worker must establish specific and material facts to support each element of his or her prima facie case. Hiatt, 120 Wash.2d at 66-67, 837 P.2d 618.

The Law Against Discrimination
Washington's law against discrimination was enacted in 1949 as an employment discrimination law. Laws of 1949, ch. 183. The law prohibited discrimination in employment on the basis of race, creed, color or national origin. The scope of protection under the law was expanded in 1957, when the law was amended to prohibit discrimination not only in employment but also in places of public resort, accommodation or amusement, and in publicly assisted housing because of race, creed, color or national origin. Laws of 1957, ch. 37. The 1957 amendment provided that the right to be free from discrimination included but was not limited to the rights listed in the chapter. Laws of 1957, ch. 37, § 3. In 1973 the law was amended to specifically prohibit discrimination in credit and insurance transactions. That same year sex, marital status, age, and disability were added as unlawful bases for discrimination. Laws of 1973, ch. 141; Laws of 1973, 1st Ex.Sess., ch. 214. Although the law has been amended since that time, it remains substantially the same as it was following the 1973 amendments.
The law against discrimination, RCW 49.60, includes general provisions recognizing that the right to be free from discrimination because of race, creed, color, national origin, sex, marital status, age or disability is a civil right. RCW 49.60.010, .030(1).[3] The law also establishes the Human Rights Commission and gives that agency "powers with respect to elimination and prevention of discrimination" in employment and in other specified areas, RCW 49.60.010, as well as the power to investigate and rule on complaints alleging unfair practices as defined in the statute. RCW 49.60.120(4).[4]
The provision of the statute which is involved in this appeal is the following:
(1) The right to be free from discrimination because of race, creed, color, national origin, sex, or the presence of any sensory, mental, or physical disability is recognized as and declared to be a civil right. This right shall include, but not be limited to:
(a) The right to obtain and hold employment without discrimination;
....
(2) Any person deeming himself or herself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, or to recover the actual damages sustained, or both, together with the cost of suit including reasonable attorneys' fees or any other appropriate remedy authorized by this chapter or the United States Civil Rights Act of 1964....
RCW 49.60.030(1) (part), (2).[5] (Emphasis added.)
The City argues that RCW 49.60.030 should be construed so as to limit causes of action for discriminatory treatment to violations of the particular rights listed in the *49 statute. In the City's view the statute should be read to prohibit discrimination in "employment" and would apply to protect "employees," but not "independent contractors" hired to perform services.
Rules of statutory construction provide that a statute which is clear on its face is not subject to judicial interpretation. In re Marriage of Kovacs, 121 Wash.2d 795, 804, 854 P.2d 629 (1993).
The Court of Appeals found that the "statutory list [contained in RCW 49.60.030], by its own terms, is not exclusive" and can be interpreted to incorporate other rights recognized in state or federal law. Marquis, 76 Wash.App. at 857, 888 P.2d 753. See also MacLean v. First Northwest Indus. of Am., Inc., 96 Wash.2d 338, 350, 635 P.2d 683 (1981) (Utter, J., dissenting) (the word "include" as used in RCW 49.60.030 is not intended to limit the scope of the statute but rather is used only to illustrate possible applications).
We agree that RCW 49.60.030(1) is unambiguous to the extent that it sets forth a nonexclusive list of rights. However, the statute is unclear to the extent that it makes a broad statement of rights, without defining the scope of those rights.
If a statute is unclear, and thus subject to judicial interpretation, it will be interpreted in the manner that best fulfills the legislative purpose and intent. In re Marriage of Kovacs, 121 Wash.2d at 804, 854 P.2d 629.
The legislative purpose of Washington's law against discrimination is set forth in the statute itself. RCW 49.60.010 provides:
This chapter shall be known as the "law against discrimination". It is an exercise of the police power of the state for the protection of the public welfare, health, and peace of the people of this state, and in fulfillment of the provisions of the Constitution of this state concerning civil rights. The legislature hereby finds and declares that practices of discrimination against any of its inhabitants because of race, creed, color, national origin, families with children, sex, marital status, age, or the presence of any sensory, mental, or physical disability ... are a matter of state concern, that such discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state. A state agency is herein created with powers with respect to elimination and prevention of discrimination in employment, in credit and insurance transactions, in places of public resort, accommodation, or amusement, and in real property transactions because of race, creed, color, national origin, families with children, sex, marital status, age, or the presence of any sensory, mental, or physical disability ...; and the commission established hereunder is hereby given general jurisdiction and power for such purposes.
The statute also requires liberal construction in order to accomplish the purposes of the law and states that nothing contained in the law shall "be construed to deny the right to any person to institute any action or pursue any civil or criminal remedy based upon an alleged violation of his or her civil rights." RCW 49.60.020. Further, we have held that a statutory mandate of liberal construction requires that we view with caution any construction that would narrow the coverage of the law. Shoreline Community College Dist. No. 7 v. Employment Sec. Dep't, 120 Wash.2d 394, 406, 842 P.2d 938 (1992).
This court has held that the purpose of the law is to deter and to eradicate discrimination in Washington, Mackay v. Acorn Custom Cabinetry, Inc., 127 Wash.2d 302, 309-10, 898 P.2d 284 (1995); Burnside v. Simpson Paper Co., 123 Wash.2d 93, 99, 864 P.2d 937 (1994), and has stated that a plaintiff bringing a discrimination case in Washington assumes the role of a private attorney general, vindicating a policy of the highest priority. Allison v. Housing Auth., 118 Wash.2d 79, 86, 821 P.2d 34 (1991). This state's strong policy against sex discrimination is further evidenced by its enactment of the Equal Rights Amendment to the state constitution. Const. art. XXXI, §§ 1-2 (amend. 61) (equality of right shall not be denied or abridged on account of sex and the legislature has the power to enforce the provisions *50 of the amendment by appropriate legislation).
In construing the law against discrimination, we have sometimes looked for guidance to cases interpreting equivalent federal law. Xieng v. Peoples Nat'l Bank, 120 Wash.2d 512, 518, 844 P.2d 389 (1993). The City urges us to adopt the reasoning of federal cases interpreting Title VII of the federal civil rights act, 42 U.S.C. § 2000e, and to hold that independent contractors are not protected under our discrimination law.
Federal cases have interpreted Title VII of the federal act to apply in the employment setting, but not to independent contractors. Knight v. United Farm Bureau Mut. Ins. Co., 950 F.2d 377, 380 (7th Cir.1991) (insurance agent was independent contractor, not an employee of insurance company, and thus not protected by Title VII); Lutcher v. Musicians Union Local 47, 633 F.2d 880 (9th Cir.1980) (musician was not entitled to protections of Title VII where musician performed as independent contractor, not as employee). See generally 1 Arthur Larson & Lex K. Larson, Employment Discrimination § 5.22 (1991).
The federal decisions appear to be based in part on the definition of "employee" contained in Title VII, 42 U.S.C. § 2000e(f) ("employee" means an individual employed by an employer), and in part on legislative history. Musicians Union, 633 F.2d at 883 (the legislative history of Title VII reveals that the statute's purpose was to eliminate discrimination in employment; consequently, there must be some connection with an employment relationship for Title VII to apply).
The language of our statute's definition section differs from that of Title VII. RCW 49.60.040(4) states that the term "employee" does not include a person employed by his or her parents, spouse, or child, or one who is in the domestic service of any person. The term "employee" is not further defined, and we therefore presume the legislature intended the word to mean what it did at common law, as limited by the statute. In re Brazier Forest Prods., Inc., 106 Wash.2d 588, 595, 724 P.2d 970 (1986). The common law distinguishes between employees and independent contractors, based primarily on the degree of control exercised by the employer/principal over the manner of doing the work involved. Fardig v. Reynolds, 55 Wash.2d 540, 544, 348 P.2d 661 (1960); Phillips v. Kaiser Aluminum & Chem. Corp., 74 Wash.App. 741, 749 n. 23, 875 P.2d 1228 (1994). We read the statute with that distinction in mind. However, we find that the statute does not foreclose a cause of action to an independent contractor because, by its own terms, RCW 49.60.030(1) does not limit the actions which may be brought to those listed in the statute.
Unlike our state law against discrimination, Title VII is limited to employment discrimination. Unlike our state law against discrimination, Title VII does not contain a broad statement of the right to be free of discrimination in other areas. Our state law does. RCW 49.60.010.[6] While Title VII of the Civil Rights Act of 1964 is similar to RCW 49.60.180, the provision delineating unfair practices in employment, there is no provision in the federal law which sets forth the equivalent of the broad language of RCW 49.60.030(1) and there is no statutory provision requiring liberal construction in order to accomplish the purposes of the act. Allison, 118 Wash.2d at 88, 821 P.2d 34. Federal cases interpreting Title VII are thus not helpful in determining the scope of RCW 49.60.030(1).
In addition to the language of the statute itself, we may also look to the Human Rights Commission's interpretation of the law as an aid in construing RCW 49.60. A court must give great weight to the statute's interpretation by the agency which is charged with its administration, absent a compelling indication that such interpretation conflicts with the legislative intent. Washington Water Power Co. v. Washington State Human Rights Comm'n, 91 Wash.2d 62, 68-69, 586 P.2d 1149 (1978). WAC 162-16-170, *51 a rule promulgated by the Human Rights Commission, states in pertinent part:
(1) Purpose of section. RCW 49.60.180 defines unfair practices in employment. A person who works or seeks work as an independent contractor, rather than as an employee, is not entitled to the protection of RCW 49.60.180....
(2) Rights of independent contractor. While an independent contractors [sic] does not have the protection of RCW 49.60.180, the contractor is protected by RCW 49.60.030(1) from discrimination because of race, creed, color, national origin, sex, handicap, or foreign boycotts. The general civil right defined in RCW 49.60.030(1) is enforceable by private lawsuit in court under RCW 49.60.030(2) but not by actions of the Washington state human rights commission.
The City argued, and the trial court agreed, that the Human Rights Commission had no authority to enact this regulation. We disagree.
An administrative agency is limited to the powers and authority granted to it by the legislature. Washington Water Power Co., 91 Wash.2d at 69, 586 P.2d 1149; Fahn, 93 Wash.2d at 374, 610 P.2d 857 (invalidating regulation preventing preemployment inquiries based on height and weight on the ground the regulation in effect established a new protected class).
The City argues that the WAC regulation relating to independent contractors creates an additional protected classthat of "independent contractors." The regulation does not create a new class. Under the statute or under the regulation, an independent contractor would have to show that he or she was a member of a protected class (i.e., a class based on race, creed, sex, national origin, etc.), not merely that he or she was an independent contractor. In light of the statute's broad mandate to the Human Rights Commission to prevent and eliminate discrimination, we find WAC 162-16-170(2) consistent with the legislative purpose behind the act, a valid exercise of the Commission's authority, and we give it great weight in construing RCW 49.60.030(1).
The Court of Appeals looked to civil rights accorded under related federal statutes to determine that RCW 49.60.030(1) could reasonably be interpreted to include the right to be free of discrimination in the making of contracts. While federal laws can provide assistance in interpreting the Washington law against discrimination, it is unnecessary to look to the federal law to determine whether a cause of action exists under state law in this case. RCW 49.60.030(1) is broadly stated, is to be liberally construed and, as part of the law against discrimination, is meant to prevent and eliminate discrimination in the State of Washington. Without reference to federal law, RCW 49.60.030(1) can be interpreted to include the civil right of independent contractors to be free of unlawful discrimination in the making and performance of contracts for personal services.
Applying general rules of statutory construction, we hold the broad recognition of rights contained in RCW 49.60.030(1) includes the right of an independent contractor to be free of discrimination based on sex, race, national origin, religion, or disability in the making or performing of a contract for personal services.

The Prima Facie Case
The statute does not provide criteria for establishing a claim of sex discrimination in the making and performance of contracts for personal services and, in this regard, it is helpful to consider interpretation of analogous federal law. Xieng, 120 Wash.2d at 518, 844 P.2d 389. See also Grimwood, 110 Wash.2d at 361, 753 P.2d 517; Ellingson v. Spokane Mortgage Co., 19 Wash.App. 48, 54, 573 P.2d 389 (1978).
This court has consistently applied the burden allocation scheme developed by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Xieng, 120 Wash.2d at 519, 844 P.2d 389. That scheme of proof is the same whether applied in an employment discrimination case alleging an unfair practice or alleging discrimination in the making of a contract. See Patterson v. McLean Credit Union, 491 U.S. 164, 186-87, 109 S.Ct. 2363, 2377-78, 105 L.Ed.2d 132 *52 (1989) (applying § 1981 to an employment contract).
Essentially, under the framework established by McDonnell Douglas, the plaintiff has the initial burden of proving a prima facie case. In any sex discrimination action based on disparate treatment, the plaintiff must demonstrate that she or he was treated differently than persons of the opposite sex who are otherwise similarly situated. Ellingson, 19 Wash.App. at 54, 573 P.2d 389. Therefore, in an action for discrimination in the making and performance of an employment contract, the plaintiff in a sex discrimination case must show (1) membership in a protected class; (2) the plaintiff was similarly situated to members of the opposite sex, i.e., that he or she was qualified for the position applied for or was performing substantially equal work; (3) because of plaintiff's sex he or she was treated differently than members of the opposite sex, i.e., that he or she was denied the position, was offered a contract only on terms which made the performance of the job more onerous or less lucrative than contracts given to members of the opposite sex, or, once offered the contract, was treated in a manner that made the performance of the work more difficult than that of members of the opposite sex who were similarly situated. See Patterson, 491 U.S. at 186-87, 109 S.Ct. at 2377-78; Ellingson, 19 Wash.App. at 54, 573 P.2d 389. Once the plaintiff establishes a prima facie case, an inference of discrimination arises. In order to rebut this inference, the defendant must present evidence that the plaintiff was rejected for the position or was treated differently for a legitimate nondiscriminatory reason. At this point, the plaintiff retains the final burden of persuading the trier of fact that discrimination was a substantial factor in the disparate treatment. See Patterson, 491 U.S. at 187, 109 S.Ct. at 2378; Mackay, 127 Wash.2d at 310, 898 P.2d 284.
The City argues here that even if an independent contractor has a cause of action under RCW 49.60.030(1), Ms. Marquis has not presented sufficient evidence to establish a prima facie case of discrimination in compensation or constructive discharge. First, the City argues that, as a matter of law, there can be no discrimination in the making of a contract where the terms of the contract have been offered to all eligible contractors, regardless of sex, race, creed, national origin or disability, after a public solicitation. We agree that a plaintiff would be unable to show that he or she was offered a contract under terms less favorable than those offered to members of the opposite sex where the same contract is offered to all. However, we cannot say, as a matter of law, that discrimination in the making of a contract cannot occur because the contract was publicly solicited. Whether a contractor was denied the contract because of membership in a protected class is a question of fact. In this case the record contains only a part of the documents which were contained in the Request for Proposals from Golf Professionals. We are unable to determine from the record before us whether the terms of Ms. Marquis' original contract were the same as those contained in the public solicitation for proposals. If they are, Ms. Marquis will not be able to show that she was offered that contract on terms and conditions different from male golf professionals submitting proposals for the job.
In any event, the original request for proposals does not affect Ms. Marquis' claim that she was discriminated against in the negotiations for the renewal of her contract. Ms. Marquis has demonstrated that (1) she is a member of a protected class; (2) she was performing substantially similar work as the male golf professionals hired by the City as independent contractors; and (3) she was treated differently in the negotiation of the renewal of her contract and possibly in the original negotiation of her contract, as well as during the performance of her contract with the City.
The City claims Ms. Marquis has not rebutted the City's evidence that the work done by the three professional golfers hired by the City was not substantially equal. Ms. Marquis has presented more than conclusory allegations with respect to this element of her case by describing the nature of the three golf courses, the comparative golfing seasons and number of golfers at each *53 course, and describing the job of the golf professionals. Whether the differences in the jobs constitute legitimate nondiscriminatory reasons for the difference in treatment is a question for the jury. The City's rebuttal of Ms. Marquis' case creates a genuine issue of material fact exists that makes summary judgment inappropriate. The ultimate burden of proving discrimination is upon Ms. Marquis.

CONCLUSION
We hold that an independent contractor who is discriminated against in the making or performance of a contract for employment because of sex, color, creed, national origin or disability has a cause of action for affirmative relief and for damages under RCW 49.60.030.
Because of our resolution of this case we do not reach the remaining issues raised by the parties.
Affirmed.
DURHAM, C.J., DOLLIVER, SMITH, JOHNSON, ALEXANDER and TALMADGE, JJ., and PEKELIS, J. Pro Tem., concur.
SANDERS, J., not participating.
MADSEN, Justice (dissenting).
I am in complete agreement with the majority's goal, which is to provide a statutory cause of action for discrimination for an independent contractor in the making or performance of a personal service contract. Discrimination is incompatible with a fair society, and it is incompatible with the personal beliefs of those seeking equality of opportunity for all workers, whether employees or independent contractors. It is with the mechanism employed by the majority to provide such a cause of action that I disagree because the majority, not the Legislature, has created the statutory cause of action.
This court should not, under the guise of interpreting a statute, create legislation. Associated Gen. Contractors v. King County, 124 Wash.2d 855, 865, 881 P.2d 996 (1994). The majority has failed to heed this caution by creating a cause of action for independent contractors which RCW 49.60 does not provide. In reaching its result, the majority relies heavily upon the broad policy statements of RCW 49.60.010 and the Human Rights Commission's unauthorized expansion of RCW 49.60.030(1). For the reasons stated below, I believe that the statute does not establish the cause of action recognized by the majority, and that the Human Rights' Commission acted without authority to create a cause of action for independent contractors under the statute.
It is important to bear in mind what this case is not about. It is not about whether discrimination is wrong. Nor is this a case about whether a cause of action exists under the Constitution.[1] What this case is about is whether there is a statutory cause of action under RCW 49.60.030(1) for an independent contractor based upon alleged discrimination in contracting for personal services. That question depends entirely upon whether the Legislature has provided such a cause of action.
I agree with the majority that an independent contractor is not an "employee" within the meaning of RCW 49.60. I also agree that RCW 49.60.030(1)(a), setting forth the specific statutory right to obtain and hold employment free of discrimination, does not apply to independent contractors. Those conclusions should end this case. Instead, relying heavily on RCW 49.60's policy language and on ambiguity it finds in RCW 49.60.030(1), the majority announces an undefined statutory cause of action.
It is true that RCW 49.60.010 contains a broad statement of policy declaring that discriminatory practices are wrong and harmful, and should be prevented or eliminated. A declaration of policy, however, has no operative force in and of itself. Food Servs. of Am. v. Royal Heights, Inc., 123 Wash.2d 779, 784, 871 P.2d 590 (1994); Oliver v. Harborview Medical Ctr., 94 Wash.2d 559, 565, 618 *54 P.2d 76 (1980). A statement of policy does not as a general rule give rise to enforceable rights and duties. Aripa v. Department of Social & Health Servs., 91 Wash.2d 135, 139, 588 P.2d 185 (1978). It is also true that RCW 49.60.020 states that RCW 49.60 is to be liberally construed to serve its purposes. However, it is also clear that while a legislative mandate that statutes be given liberal effect is of great significance in construing statutes, such a mandate does not require, or justify, a strained or unrealistic interpretation. Bird-Johnson Corp. v. Dana Corp., 119 Wash.2d 423, 427, 833 P.2d 375 (1992).
The existence of an undefined statutory cause of action for independent contractors also depends on the majority's finding that the statute is ambiguous. This ambiguity exists, the majority says, because RCW 49.60.030(1) says that the civil right to be free from discrimination on the basis of race, creed, color, national origin, sex, or disability "shall include, but is not limited to" the specific rights enumerated in the statute. This means, the majority reasons, that it is unclear what other specific rights are encompassed within the statute. The statute is therefore ambiguous, and the majority may resort to the Human Rights Commission's view of things, as that is the agency charged with implementing RCW 49.60. Since the Human Rights Commission says that independent contractors may bring a private cause of action for discrimination in personal services contracts under RCW 49.60.030, that is what the statute means.
The first difficulty with this reasoning is that the statute is not ambiguous as to whether an independent contractor has a cause of action under RCW 49.60.030. The statute says that the specific rights listed, for example, the rights to be free from discrimination in employment, credit transactions, and real estate transactions, are not exclusive. It also says that any person alleging injury resulting from "any act in violation of this chapter" shall have a civil cause of action. RCW 49.60.030(2) (emphasis added). There is no right of an independent contractor to bring an action under the chapter, and no corresponding duties or unfair practices relating to contracting with an independent contractor identified within the chapter. Therefore, I do not understand how there can be a civil cause of action for a violation "of this chapter," i.e., RCW 49.60.
While RCW 49.60.030(1) states that the list of enumerated rights is not exclusive, it does not say that a statutory cause of action exists for any unenumerated rights. In the nearly 40 years since the language "shall include, but not be limited to" was added to the statute, see Laws of 1957, ch. 37, § 3, that language has never served as the basis for an appellate decision recognizing a cause of action for violation of any right not expressly identified by the Legislature in RCW 49.60. Had the Legislature intended that a cause of action exist for any specific right not enumerated in the chapter, it could easily have said so. See Roy v. City of Everett, 118 Wash.2d 352, 359, 823 P.2d 1084 (1992).
However, assuming that RCW 49.60.030 is ambiguous, as the majority reasons, principles of statutory construction and the law regarding delegation of legislative powers compel the conclusion that an independent contractor does not have a cause of action for alleged discriminatory practices in contracting for personal services.
Where possible, statutes should be read together to determine the legislative purpose and to achieve a total harmonious statutory scheme. King County Fire Protection Dist., No. 16 v. Housing Auth., 123 Wash.2d 819, 826-27, 872 P.2d 516 (1994). The meaning of ambiguous statutes must be determined by examining the statutory scheme as a whole, and legislative history may serve as an important tool in divining legislative intent. In re Sehome Park Care Ctr., 127 Wash.2d 774, 778, 903 P.2d 443 (1995).
The statutory scheme as a whole and the legislative history show that when the Legislature has identified a specific right within RCW 49.60.030, it has also defined, by statute, what constitutes an unlawful violation of that right. The Legislature has never created a protected right in RCW 49.60.030 without simultaneously and expressly defining the statutory violation in detail. Thus, as RCW 49.60 presently exists, every right specified in RCW 49.60.030(1) is counterbalanced *55 by a specific statute defining the obligation which is coextensive with that right.
RCW 49.60.030(1)(a) states the right to be free from discrimination in employment. The corresponding statutes are RCW 49.60.180, .190, and .200, defining unfair practices of employers, labor organizations, and employment agencies. All of these provisions were part of the original enactment of RCW 49.60. See Laws of 1949, ch. 183, §§ 2, 7.
RCW 49.60.030(1)(b) states the right to be free from discrimination in places of public resort, accommodation, or amusement. The statute defining the corresponding unfair practices is RCW 49.60.215. These provisions were added to RCW 49.60 in 1957. See Laws of 1957, ch. 37, §§ 3, 14.
RCW 49.60.030(1)(c) states the right to be free from discrimination in real estate transactions. The corresponding statutes defining unfair practices in real estate transactions are RCW 49.60.222, .223, and .224. All of these provisions were part of the same legislation enacted in 1969. See Laws of 1969, 1st. Ex.Sess., ch. 167, §§ 2, 4, 5, 6.
RCW 49.60.030(1)(d) states the right to be free from discrimination in credit transactions. The unfair practices are defined in RCW 49.60.175 and .176. Subsection (1)(d) was enacted in 1973, and the same legislation included enactment of RCW 49.60.176 and amendment of RCW 49.60.175, which had originally been enacted in 1959 before the right to be free from discrimination in credit transactions was added to RCW 49.60.030. See Laws of 1973, ch. 141, §§ 3, 5, 9; Laws of 1959, ch. 68, § 1.[2]
RCW 49.60.030(1)(e) states the right to be free from discrimination in insurance transactions. RCW 49.60.178 is the corresponding statute defining the unfair practices violative of this right. These provisions were part of the same legislation enacted in 1973. See Laws of 1973, ch. 141, § 3, 6.
RCW 49.60.030(1)(f) states the right to be free from discriminatory boycotts and blacklists while engaged in commerce. Although no separate statute was enacted to define the violation of this right, subsection (1)(f) is quite detailed and describes at length what constitutes discrimination in violation of the right.[3]
The Legislature has twice added language to the six protected rights identified in RCW 49.60.030(1). In 1984, the Legislature amended RCW 49.60.030 and added to the right to be free from discrimination in insurance transactions the right to be free from discrimination in transactions involving health maintenance organizations. Laws of 1984, ch. 32, § 2. The amendment to RCW 49.60.030 was accompanied by legislation defining the discriminatory violation of the expressly declared right: RCW 49.60.178 was amended to include description of unfair practices involving health maintenance organizations.
Then, in 1993, the Legislature amended RCW 49.60.030(1)(c) to include within the *56 right to be free from discrimination in real estate transactions the right to be free from discrimination against families with children. Laws of 1993, ch. 69, § 1. At the same time, RCW 49.60.222, RCW 49.60.223, and RCW 49.60.224 were each amended to include description of unfair discriminatory practices against families with children in real estate transactions. Laws of 1993, ch. 69, §§ 5, 6, 8.[4]
Given this carefully developed, detailed, extensive statutory scheme, I do not believe the Legislature intended an implied civil cause of action under the statute for independent contractors based upon alleged discrimination in contracting for personal services  independent contractors are nowhere discussed in RCW 49.60. Nor is it wise to assume that any unidentified discriminatory practices involving such inferred, but unexpressed, right is actionable. The Legislature has often limited the scope of the statutory cause of action based upon unfair, discriminatory practices. For example, not all employment discrimination gives rise to a cause of action. The Legislature has decided for policy reasons that discrimination actions under RCW 49.60 are foreclosed when arising in employment relationships involving employers of fewer than eight persons, nonprofit employers, and persons employed by parents, spouses, or children, or those in domestic service. See RCW 49.60.040(3), (4); RCW 49.60.180; RCW 49.60.[5] Also, for policy reasons, the Legislature has declared that sex discrimination actions may not be based upon an employer providing separate washrooms or locker facilities. RCW 49.60.180(3).
The majority's resolution of this case defies the legislative scheme. Under the majority opinion the existence of a specific (unidentified) right to be free from discrimination, the definition of the unfair, discriminatory practice associated with that unexpressed but statutorily protected right, and any limitations or exceptions will be determined, not by the Legislature, but by this court. Indeed, the majority's recognition of a cause of action for independent contractors is not nearly so much recognition of a statutory cause of action as it is the creation of a common law civil action based upon broad policy language in RCW 49.60. By creating such a cause of action under the guise of interpreting RCW 49.60.030(1), the majority usurps the legislative function. In the process, of course, it assures statutory remedies, among them the costs of suit including attorneys' fees.
Aside from policy language in the statute, the chief support for the majority's conclusion is the Human Rights Commission's promulgation of WAC 162-16-170(2) adding a civil cause of action for independent contractors to RCW 49.60.030. First, it is doubtful that this court should give any deference to the Human Rights Commission in this case. In general it is appropriate to defer to an enforcing agency's interpretation of an ambiguous statute if the statute is within the agency's special expertise. ARCO Prods Co. v. Utilities and Transp. Comm'n, 125 Wash.2d 805, 810, 888 P.2d 728 (1995); Citizens for a Safe Neighborhood v. Seattle, 67 Wash.App. 436, 440, 836 P.2d 235 (1992) (quoting and citing Mall, Inc. v. Seattle, 108 Wash.2d 369, 377-78, 739 P.2d 668 (1987)), review denied, 120 Wash.2d 1020, 844 P.2d 1017 (1993). An agency may not, however, amend a statute. Mall, Inc., 108 Wash.2d at 378, 739 P.2d 668. The Human Rights Commission *57 has no special expertise to decide whether a cause of action for independent contractors was intended by the Legislature. WAC 162-16-170(2) is an agency amendment of RCW 49.60.030(1), because it adds to the six specific rights listed in the statute a seventh right. For these reasons, I do not believe this court should defer to the Human Rights Commission's interpretation of RCW 49.60.030.
Second, the majority's rejection of the City of Spokane's argument that the Human Rights Commission lacked authority to enact this regulation is in error. An administrative agency is limited to the powers and authority which the Legislature grants to it. Fahn v. Cowlitz County, 93 Wash.2d 368, 374, 610 P.2d 857 (1980), amended in 621 P.2d 1293 (Wash.1981). In general, an agency or administrative board charged with enforcement of certain statutes may lawfully exercise delegated authority where the Legislature has provided standards or guidelines which indicate in general terms what the designated administrative body is to do, if adequate safeguards are provided in regard to promulgation of rules and testing the constitutionality of the rules after promulgation. City of Auburn v. King County, 114 Wash.2d 447, 452, 788 P.2d 534 (1990); Barry & Barry, Inc. v. Department of Motor Vehicles, 81 Wash.2d 155, 500 P.2d 540 (1972), appeal dismissed, 410 U.S. 977, 93 S.Ct. 1503, 36 L.Ed.2d 173 (1973). Authority may be delegated to determine a fact or state of things upon which application of the law is made to depend. Fahn, 93 Wash.2d at 374, 610 P.2d 857.
RCW 49.60.120(3) gives the Human Rights Commission the power and the duty "[t]o adopt, promulgate, amend, and rescind suitable rules and regulations to carry out the provisions of this chapter...." The Human Rights Commission has acted in excess of this delegation because nothing "in this chapter," i.e., RCW 49.60, pertains to a cause of action for an independent contractor. (Emphasis added). The Commission has not simply determined facts or the state of things upon which application of the provisions of RCW 49.60.030 depend; it has instead construed RCW 49.60.030(1) to include a new right relating to independent contractors. Only after addition of such a new right would RCW 49.60.030(2), authorizing a private civil cause of action, apply to independent contractors. Just as the Human Rights Commission does not have authority to add to the protected classes in RCW 49.60, it does not have authority to add to the protected rights in RCW 49.60. See Gugin v. Sonico, Inc., 68 Wash.App. 826, 830-31, 846 P.2d 571 (1993) (citing Fahn, 93 Wash.2d at 383, 610 P.2d 857).
Further, RCW 49.60.120(4) only provides the Commission with authority "[t]o receive, impartially investigate, and pass upon complaints alleging unfair practices as defined in this chapter." (Emphasis added.) Without question there is no unfair practice involving discrimination against independent contractors defined in RCW 49.60. In WAC 162-16-170(2) the Commission expressly recognizes that the cause of action it has set out is not within its jurisdiction. I do not agree that the delegated legislative authority permits the Commission to state a cause of action beyond its own jurisdiction.
There is no merit to Plaintiffs' argument that the Legislature silently acquiesced in the Human Rights Commission's view thatindependent contractors have a civil cause of action under RCW 49.60.030 when the Legislature amended the statute following the Commission's promulgation of WAC 162-16-170(2). The rule of silent acquiescence following administrative construction of a statute only applies when the subsequent legislative consideration involves the same issue as that covered by the administrative rule. Safeco Ins. Cos. v. Meyering, 102 Wash.2d 385, 392, 687 P.2d 195 (1984); City of Seattle v. King County, 52 Wash.App. 628, 633, 762 P.2d 1152 (1988), review denied, 112 Wash.2d 1002 (1989). There is no showing that the Legislature considered independent contractors when it enacted the subsequent amendments to RCW 40.60.030.
I would hold that the Human Rights Commission has acted in excess of its delegated authority, and that WAC 162-16-170(2) is invalid. For this reason, too, I would reject use of the WAC as guidance in construing RCW 49.60.030.
*58 Finally, as to delegation, if the Legislature truly has delegated authority to the Human Rights Commission to recognize an independent contractor's cause of action, that delegation is an unconstitutional delegation of purely legislative authority.
"The Legislature is prohibited from delegating its purely legislative functions." Diversified Investment Partnership v. Department of Social & Health Services, 113 Wash.2d 19, 24, 775 P.2d 947 (1989); see Const art. 2, § 1; Hi-Starr, Inc. v. Liquor Control Bd., 106 Wash.2d 455, 458, 722 P.2d 808 (1986). "[N]ondelegable powers include the power to enact, suspend, and repeal laws, and the power to declare general public policy." Diversified, 113 Wash.2d at 24, 775 P.2d 947. "A statute must be complete in itself when it leaves the hands of the Legislature." Id., at 24, 775 P.2d 947. "Purely legislative power, which can never be delegated, has been described as the authority to make a complete lawcomplete as to the time when it shall take effect and as to whom it shall be applicableand to determine the expediency of its enactment." 16 Am.Jur.2d, Constitutional Law § 337, at 877-78 (1979) (emphasis added).
The Human Rights Commission's rule purports to grant a cause of action to independent contractors, and thus purports to determine to whom this law is applicable, i.e., persons discriminating against independent contractors in personal services contracts. Such is manifestly a purely legislative function. If the Legislature's delegation of authority includes the power to set forth a cause of action, it is an unconstitutional delegation of purely legislative authority. See, e.g., Noss v. Abrams, 787 S.W.2d 834, 837-38 (Mo.App.1990) (administrative agency's regulation may not create a private cause of action where no such cause of action exists by statute or common law; power to enact law is granted exclusively to legislative body and may not be delegated).
Limitations on agency action within delegated authority, as well as constitutional limitations upon what authority can be delegated by the Legislature, serve the goal of political accountability in a consensual government. See generally Laurence H. Tribe, American Constitutional Law § 5-17, at 364 (2d ed.1988). When an administrative body, not the Legislature, chooses to decide what the law is, and who will be liable for violation of a specific right identified not by the Legislature, but by the administrative body, the choice is not one made by a representative branch of government. Recognition of a statutory cause of action for discrimination must lie in the hands of the Legislature and not in those of an administrative body charged with enforcing those statutory provisions which actually exist.
Of course, regardless of what the Human Rights Commission has declared, this court has the ultimate authority to construe RCW 49.60.030. Waste Management of Seattle, Inc. v. Utilities and Transportation Comm'n, 123 Wash.2d 621, 627, 869 P.2d 1034 (1994). It is fundamental that statutes be given a rational and sensible interpretation. State v. Thomas, 121 Wash.2d 504, 851 P.2d 673 (1993). In the face of the detailed rights and obligations which the Legislature has defined in RCW 49.60, it is not rational for this court to infer a specific civil cause of action from general policy statements.
I have no quarrel with the notion that the Legislature could, if it chooses to do so, expand the specific rights listed in RCW 49.60.030 to include causes of action for independent contractors. I particularly do not quarrel with the premise that discrimination in its myriad forms is inimical to the best interests of our society. But it is not the place of the Human Rights Commission, nor this court, to amend RCW 49.60.030 to add a cause of action for independent contractors. The majority opinion, legislating as it does, will have ramifications not considered and not passed upon by the Legislature. As I read the majority, a homeowner hiring an independent contractor to repair a roof or maintain a yard, for example, is subject to a discrimination action. While that is a fair result, given the legislative history and the careful statutory scheme discussed above, I doubt that it is one which the Legislature has contemplated.
I would hold that no cause of action exists under RCW 49.60.030 for an independent contractor alleging discrimination in the *59 making or performance of a contract for personal services.
Finally, I believe the decision in this case cannot be reconciled with the majority's analysis in Griffin v. Eller, No. 62540-9 (1996), also filed today. If Ms. Marquis has a statutory right to be free of discrimination, enforceable by a private action, then Ms. Griffin likewise has such a right. I am hopeful the Legislature will address the unfairness created by these two disparate holdings.
NOTES
[1] Ms. Marquis' Complaint for Sex Discrimination sets forth claims for (1) breach of contract, (2) sex discrimination, (3) retaliation, (4) tortious interference with business expectancy, and (5) breach of duty of good faith and fair dealing. Only the claims relating to sex discrimination are involved in this appeal.
[2] The Court of Appeals held that the federal statute's limitation to race discrimination was inapplicable in Washington because this state's constitution, Const. art. XXXI, § 1 (amend. 61), prohibits sex discrimination. Marquis, 76 Wash. App. at 858, 888 P.2d 753.
[3] RCW 49.60.030(1) does not include age or marital status within the enumeration of protected classes. Discrimination in employment because of age or marital status is prohibited under RCW 49.60.180 and RCW 49.44.090(age).
[4] Unfair practices in employment are defined in RCW 49.60.180 and generally prohibit discrimination in hiring, discharging, or in terms and conditions of employment because of membership in a protected class. Plaintiff Marquis brought this action under RCW 49.60.030 and did not allege a violation of RCW 49.60.180.
[5] The statute was amended after this action was filed. None of the amendments affects the issues involved in this case, and the latest version of the statute is used herein.
[6] We find it unnecessary to further construe the meaning of "employment" under RCW 49.60 at this time. Ms. Marquis' complaint alleges that she was discriminated against while acting as an independent contractor, not as an employee.
[1] Unlike the federal system, Washington had no statutory cause of action for a violation of a constitutional right. See 42 USC § 1981.
[2] This sequence lends some meaning to RCW 49.60.030(1)'s language that the civil right "shall include, but not be limited to ..." When RCW 49.60.175 was enacted in 1959, defining unfair discriminatory practices in certain credit transactions, RCW 49.60.030(1) did not list as one of the enumerated rights the right to be free of discrimination in credit transactions. Not until 1973 was that right expressly added to RCW 49.60.030(1). However, with enactment of RCW 49.60.175, it was clear that the specific right existed under RCW 49.60 even though it was not set forth in RCW 49.60.030(1) until later.
[3] The provision states:

(1) The right to be free from discrimination... shall include...:
....
(f) The right to engage in commerce free from any discriminatory boycotts or blacklists. Discriminatory boycotts or blacklists for purposes of this section shall be defined as the formation or execution of any express or implied agreement, understanding, policy or contractual agreement for economic benefit between any persons which is not specifically authorized by the laws of the United States and which is required or imposed, either directly or indirectly, overtly or covertly, by a foreign government or foreign person in order to restrict, condition, prohibit, or interfere with or in order to exclude any person or persons from any business relationship on the basis of race, color, creed, religion, sex: PROVIDED HOWEVER, That nothing herein contained shall prohibit the use of boycotts as authorized by law pertaining to labor disputes and unfair labor practices.
RCW 49.60.030(1)(f).
[4] Other statutes in RCW 49.60 define further discriminatory unfair practices. RCW 49.60.172, .174 (concerning employment discrimination with respect to HIV infection); RCW 49.60.210 (concerning discrimination against one opposing discrimination under RCW 49.60); RCW 49.60.220 (unfair practice to aid or abet unfair practices under RCW 49.60); RCW 49.60.2235 (unfair practices relating to another person's exercise of the right to be free of discrimination in real estate transactions). Still other statutes help clarify the rights enumerated in RCW 49.60.030(1) and the corresponding unfair practices. E.g., RCW 49.60.040 (definitions section). No statute in RCW 49.60, however, relates to discrimination in contracting with independent contractors.
[5] Of course, if this court in this case can disregard the express statutory limitation that a cause of action may be brought only for violations "of this chapter," i.e., violations of what is actually set out in RCW 49.60, then it is just as logical for this court to disregard other express statutory language and declare, for example, that a cause of action may be brought under RCW 49.60.030 for employment discrimination even if the employer has fewer than eight employees.