[Nos. 67182-6; 67390-0.  En Banc.]

Argued June 10, 1999.    Decided October 14, 1999.

*In the Matter of the Personal Restraint of* JAMES A. SMITH, *Petitioner.*

*In the Matter of the Personal Restraint of* DEREK E. GRONQUIST, *Petitioner.*

---

200

*James A. Smith*, pro se.
*Derek Gronquist*, pro se.
*Sheryl Gordon McCloud*, for petitioners.
*Christine O. Gregoire, Attorney General*, and *John S. Blonien* and *Thomas J. Young, Assistants*; and *Jeffrey C. Sullivan, Prosecuting Attorney*, and *Bruce Hanify, Deputy*, for respondent.

JOHNSON, J. — These consolidated personal restraint petitions ask us to determine the applicability of former RCW 9.94A.150(1) (1996) to certain class B offenses. The question is whether the Department of Corrections (DOC) erroneously applied the statute when it capped petitioners' "earned early release time" at 15 percent of their respective sentences. We find DOC was in error and grant the petitions.

## FACTS

Petitioner James Smith was convicted of attempted rape in the first degree, burglary in the first degree, and residential burglary. The sentences on the burglary charges have expired but Smith remains incarcerated on the attempted rape conviction. Petitioner Derek Gronquist was convicted of three counts of attempted kidnapping in the first degree and is still serving the sentence imposed for those crimes.

Attempted rape in the first degree constitutes a serious violent offense under RCW 9.94A.030(31)(a). It is a class B felony. RCW 9A.28.020(3)(b); RCW 9A.44.040(2). Similarly, attempted kidnapping in the first degree constitutes a serious violent offense under RCW 9.94A.030(31)(a). It is also a class B felony. RCW 9A.28.020(3)(b); RCW 9A.40.020(2).

## ANALYSIS

The only question is whether DOC correctly applied former RCW 9.94A.150(1) (1996) when it capped petitioners' earned early release time at 15 percent of their respective sentences. The relevant statutory language reads:

> Except as otherwise provided for in subsection (2) of this section, the term of the sentence of an offender committed to a

correctional facility operated by the department, may be reduced by earned early release time in accordance with procedures that shall be developed and promulgated by the correctional agency having jurisdiction in which the offender is confined. . . . *In the case of an offender convicted of a serious violent offense or a sex offense that is a class A felony committed on or after July 1, 1990, the aggregate earned early release time may not exceed fifteen percent of the sentence.* In no other case shall the aggregate earned early release time exceed one-third of the total sentence.

Former RCW 9.94A.150(1) (1996) (emphasis added).[1]

The dispositive issue is whether, under the language of the statute, an offender must have committed a class A serious violent offense in order for the 15 percent earned early release cap to apply. DOC argues the 15 percent cap applies to *all* serious violent offenses regardless of their classification, but only to sex offenses that are class A felonies.[2] Conversely, petitioners argue sex offenses *and* serious violent offenses must be class A felonies before the 15 percent cap may be imposed. Because petitioners' serious violent offenses are class B felonies, they argue their earned early release time should properly have been capped at one-third of their maximum sentences rather than 15 percent.

In *In re Personal Restraint of Mahrle*, 88 Wn. App. 410, 945 P.2d 1142 (1997), the Court of Appeals, Division Three, squarely addressed the identical issue presented here. Applying the "last antecedent" rule of statutory construction,

---

[1]Amended by LAWS OF 1999, ch. 37 § 1.

[2]DOC also argues the statute provides it the discretion to limit earned early release time to anything below the maximum, so long as there is a rational basis for doing so. However, we do not find this issue squarely present for review. In any event, DOC's argument on this point is not well taken. The cases DOC relies on are not persuasive of its position. *See In re Personal Restraint of Williams*, 121 Wn.2d 655, 853 P.2d 444 (1993); *In re Personal Restraint of Fogle*, 128 Wn.2d 56, 904 P.2d 722 (1995); *but see MacFarlane v. Walter*, 179 F.3d 1131 (9th Cir. 1999). Even assuming the statute provides DOC discretion to adopt a policy limiting all serious violent offenders to 15 percent earned early release time, DOC is unable, or has failed, to point out to this court any duly promulgated rule formally instituting such a policy. We decline to rest any decision on the bare assertions of counsel that such is, in fact, the "policy" of DOC.

the *Mahrle* court concluded the meaning of the statute was susceptible of two reasonable interpretations. *Mahrle*, 88 Wn. App. at 412-15. Under the rule of lenity, therefore, the court construed the statute strictly against DOC and held the 15 percent cap applies only to serious violent offenses that are also class A felonies.[3] *Mahrle*, 88 Wn. App. at 415.

Once again, DOC advances the "last antecedent" rule to support its argument that the 15 percent cap is not limited to class A serious violent offenses. Under DOC's theory, the qualifying phrase, "that is a class A felony," was not intended by the Legislature to modify "a serious violent offense," but rather, was intended to modify only the last antecedent, "or a sex offense." We disagree with DOC's interpretation. Proper application of the "last antecedent" rule defeats DOC's position.[4]

■■ The problem before us is one of statutory construction. Our primary objective in construing a statute is to ascertain and give effect to the legislative intent. *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996); *In re Estate of Kurtzman*, 65 Wn.2d 260, 263,

---

[3]DOC filed a motion for discretionary review of the *Mahrle* decision, which this court denied by court order on November 5, 1997. Therefore, DOC was not justified in declining to follow *Mahrle*, especially in light of this court's action. Instead, in letters to the petitioners here, DOC refused to apply *Mahrle* to their identical circumstance, explaining it had determined to apply the court's holding only to the petitioner in the *Mahrle* case itself. Despite its position that *Mahrle* did not state a rule of general applicability, however, DOC nevertheless advocated the 1999 amendment to the statute, which was enacted specifically to address the *Mahrle* decision. Moreover, applying basic rules of law, the holding in *Mahrle* was clearly applicable to all persons similarly situated (particularly in regards to petitioner Smith, who was located within the jurisdiction of the Court of Appeals, Division Three). At the time DOC refused to apply *Mahrle*'s holding to the present petitioners, no published Washington appellate court decision other than *Mahrle* had addressed the issue there presented. *Mahrle*, therefore, was authoritative precedent and binding on DOC as a party thereto. Given these circumstances, we find DOC's actions here troubling. We have repeatedly stated it offends the rule of law when agencies of the state willfully ignore the decisions of our courts. *See Sintra, Inc. v. City of Seattle*, 119 Wn.2d 1, 24, 829 P.2d 765 (1992); *R/L Assocs. v. City of Seattle*, 113 Wn.2d 402, 411, 780 P.2d 838 (1989). Once again, we find it necessary to reiterate this fundamental point.

[4]Although we reach the same result as did the Court of Appeals in *Mahrle*, because we think the statute is not susceptible of more than one reasonable interpretation, we do not resort to the rule of lenity. *See State v. McGee*, 122 Wn.2d 783, 787, 864 P.2d 912 (1993).

396 P.2d 786 (1964). In general, the intent of the Legislature is to be deduced from what it said. *In re Estate of Kurtzman*, 65 Wn.2d at 263 (citing *Lynch v. Department of Labor & Indus.*, 19 Wn.2d 802, 806, 145 P.2d 265 (1944)); *accord In re City of Renton*, 79 Wn.2d 374, 376, 485 P.2d 613, 58 A.L.R.3D 196 (1971). We avoid interpretations that are forced, unlikely, or strained. *State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314 (1992); *State v. Carter*, 89 Wn.2d 236, 242, 570 P.2d 1218 (1977); *State v. Rinkes*, 49 Wn.2d 664, 667, 306 P.2d 205 (1957).

■ ■ The "last antecedent" rule of statutory construction "provides that, *unless a contrary intention appears in the statute*, qualifying words and phrases refer to the last antecedent." *In re Sehome Park Care Ctr., Inc.*, 127 Wn.2d 774, 781, 903 P.2d 443 (1995) (emphasis added). A corollary to the rule is that "the presence of a comma before the qualifying phrase is evidence the qualifier is intended to apply to all antecedents instead of only the immediately preceding one." *Sehome Park*, 127 Wn.2d at 781-82. According to DOC, therefore, the rule requires us to construe the class A felony qualifier as modifying only the immediate antecedent term—sex offense. "This follows from the fact that the [qualifying] phrase comes immediately after the term 'sex offense' and there is no comma prior to that term." Supplemental Br. of Resp't (DOC) at 15 (citing *State v. Blilie*, 132 Wn.2d 484, 492, 939 P.2d 691 (1997) for the proposition that the Legislature is presumed to know the rules of statutory construction).

The problem with DOC's proposed construction is that *two* qualifying phrases appear within the sentence at issue. The qualifying phrase, "that is a class A felony," is followed immediately by a second qualifying phrase, "committed on or after July 1, 1990." No punctuation separates the two phrases. DOC would have us interpret the statute so the class A felony qualifier modifies only the single antecedent term, "sex offense," but yet have the second, date restriction qualifier modify both antecedent terms, despite the fact it also is not preceded by a comma. This is at odds

with DOC's own articulation of the last antecedent rule, would require a forced construction of the relevant language, and simply makes no sense. On the other hand, to properly apply DOC's articulation of the rule (i.e., that both modifiers, since they are not preceded by a comma, restrict only the immediate antecedent term, "sex offense") would lead to the absurd consequence that sex offenses under the statute are restricted by date, whereas serious violent offenses are not.[5]

In *In re Estate of Kurtzman*, 65 Wn.2d at 264, we stated the "last antecedent" rule means "the last word, phrase or clause that can be made an antecedent *without impairing the meaning of the sentence.*" (Emphasis added.) Similarly, we have stated:

> The [last antecedent] rule is another aid to discovery of intent or meaning *and is not inflexible or uniformly binding*. Where the sense of the entire act requires that a qualifying word or phrase apply to several preceding or even succeeding sections, *the word or phrase will not be restricted to its immediate antecedent*.

*State v. McGee*, 122 Wn.2d 783, 788-89, 864 P.2d 912 (1993) (alteration in original) (emphasis added) (quoting 2A NORMAN J. SINGER, STATUTORY CONSTRUCTION § 47.33, at 270 (5th ed. 1992) (footnote omitted)).

Taking the language of the sentence as a whole, the proper application of the "last antecedent" rule in this case is to construe the entire phrase, "a serious violent offense or a sex offense," as a single antecedent which is modified by both qualifying phrases, "that is a class A felony" and "committed on or after July 1, 1990." *Cf. Boeing Co. v. Department of Licensing*, 103 Wn.2d 581, 587, 693 P.2d 104 (1985) (treating the phrase, "any air carrier *or* supplemental air carrier," as a single antecedent in which both subject terms are restricted by the immediately

---

[5]In addition to the fact that date restrictions would normally (and necessarily) apply to all defined acts in a criminal statute, recent legislative amendments to the punctuation of the sentence at issue support the conclusion the date restriction here applies to both antecedent terms. *See infra* at 207.

following qualifying phrase, although not preceded with a comma) (emphasis added). This is the only interpretation that leaves the meaning of the whole sentence unimpaired while at the same time preserving the primary intent of the section—to restrict the potential earned early release time of certain, egregious offenders.

Even if we were to find the statute ambiguous and resort to legislative history, the result would be the same. In *Mahrle*, the Court of Appeals correctly analyzed the legislative history:

> [T]he 1990 amendment to RCW 9.94A.150 was passed in response to recommendations made by Governor Booth Gardner's Task Force on Community Protection.[6] Originally, the proposed bill put a 15 percent cap on good time for persons convicted of "a sex offense that is a class A felony." The Senate amended the act to add the phrase "a serious violent offense," as it now appears in the statute. The amendment was on Senator Gaspard's motion, who stated on the floor of the Senate: "These are crimes that we should all be very much repulsed by, the murder, the homicide by abuse, assault, kidnapping, rape, and I think these types of crimes ought to be included in reduction of good time." Senator McDonald, Chair of the Senate Ways and Means Committee, is also quoted as asking Norm Maleng of the Task Force why the original provision was restricted to sex crimes: "Others have said 'lets do it for all *class A* felonies' why did you restrict it to that area?" Mr. Maleng answered that the Task Force believed its mandate from the Governor had to do with sex offenses.

*Mahrle*, 88 Wn. App. at 412 (emphasis added). Thus, the legislative history does not support DOC's position. The best that can be said is it adds nothing to the discussion. However, given the fact the Legislature originally considered reducing earned early release for class A sex offenses only, and then included serious violent offenses without any suggestion it intended to include lesser offense clas-

---

[6]Prior to the 1990 amendment, the statute placed no special restriction on the earned early release time applicable to certain types of offenses. Instead, all offenders could earn up to one-third off their sentences through earned early release. *See* Laws of 1984, ch. 209, § 8.

sifications in this category, the more likely conclusion is that its intent was to restrict class A offenses of either a violent or a sexual nature. Certainly, Senator McDonald's comment (quoted in *Mahrle*, above) suggests the latter. DOC points to nothing in the legislative history that demonstrably supports its position.[7]

Finally, we reject DOC's contention that recent changes made to the language at issue "clarify" the original legislative intent. After we accepted review in this case, the Legislature amended the statute. The new language reads (changes indicated by brackets):

> In the case of an offender convicted of a serious violent offense[,] or a sex offense that is a class A felony[,] committed on or after July 1, 1990, the aggregate earned early release time may not exceed fifteen percent of the sentence.

LAWS OF 1999, ch. 37 § 1. Both the House and Senate bill reports stated the added punctuation is meant to clarify the original intent of the 1990 law, as then enacted.

We need not decide whether the amended language makes the meaning of the statute unequivocal, as DOC suggests. We do note, however, the amended language supports our reading of the 1990 statute. Due to the presence of the second qualifying phrase—the date restriction—it was necessary to *separate* the antecedent terms with a comma in order that the qualifying phrase, "that is a class A felony," restrict only the term, "sex offense," while still permitting the date restriction to apply to both antecedent terms, "serious violent offense" and "sex offense." Thus, contrary to DOC's argument, under the language of the 1990 law the phrase, "serious violent offense or a sex offense," must be treated as a single antecedent in order to preserve the meaning of that (unpunctuated) sentence.

██ Nor do we find that the amended language may be

---

[7]Accordingly, had we not found the statute susceptible of only one reasonable interpretation, the rule of lenity would have required finding against DOC's interpretation. *See In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 250 n.4, 955 P.2d 798 (1998) (if statutory construction and legislative history fail to remove ambiguity, rule of lenity applies).

applied retroactively to petitioners. Retroactive application of a law violates the ex post facto clause if it increases the quantum of punishment for an offense after the offense was committed. *State v. Hennings*, 129 Wn.2d 512, 525, 919 P.2d 580 (1996); *State v. Ward*, 123 Wn.2d 488, 496, 869 P.2d 1062 (1994). A change in the law that limits eligibility for reduced imprisonment violates the ex post facto clause when applied to individuals whose crimes were committed before the law's enactment. *Weaver v. Graham*, 450 U.S. 24, 31-36, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981).

DOC asserts the petitioners were never entitled to more than a 15 percent reduction of their sentences through earned early release and, therefore, the quantum of punishment has not been increased by the "clarifying" statutory amendment. We have already rejected the argument upon which this assertion is based. The language of the 1990 law leaves no alternative but to interpret it to apply a 15 percent cap only to those serious violent offenses that are also class A felonies. Petitioners' offenses do not fall within this category. Whether the meaning of the 1990 law is the result of a drafting error is immaterial. *See* S.B. REP. (H.B. 1297), 56th Leg., Reg. Sess. (Wash. Mar. 18, 1999) (suggesting the 1999 amendment was necessary to correct a "drafting error"). We are bound to give effect to the language of the statute. *See In re Estate of Kurtzman*, 65 Wn.2d at 263 (the intent of the Legislature is to be deduced from what it said). *Accord In re City of Renton*, 79 Wn.2d at 376. The legislative history *at the time the statute was enacted* does not support DOC's position. The Legislature's characterization of the recent amendment as a clarification does not control constitutional ex post facto analysis. *See Hennings*, 129 Wn.2d at 525. The only question is whether the amended law effects a substantive change in the statute that increases the quantum of punishment. Because we find that it does, the amended statute may not be applied to petitioners.

The personal restraint petitions are granted. The DOC is directed to recalculate petitioners' earned early release

time using the one-third cap otherwise permitted by the statute.[8]

SMITH, MADSEN, ALEXANDER, TALMADGE, SANDERS, and IRELAND, JJ., concur.

GUY, C.J. (dissenting) — Like the Court of Appeals in *In re Personal Restraint of Mahrle*, 88 Wn. App. 410, 415, 945 P.2d 1142, *motion for discretionary review denied* (Wash. Nov. 11, 1997), I would hold former RCW 9.94A.150(1) (1996) ambiguous, and I would then apply established principles of statutory construction to determine the meaning of the statute.

One such principle, particularly applicable in this case, was recently articulated in *State v. Riles*, 135 Wn.2d 326, 957 P.2d 655 (1998), as follows:

> Where there has been doubt or ambiguity surrounding a statute, amendment by the Legislature is interpreted as some indication of legislative intent to clarify, rather than to change, existing law. A subsequent amendment can be further indication of the statute's original meaning where the original enactment was "ambiguous to the point that" it generated dispute as to what the Legislature intended." One can conclude from these amendments [to RCW 9.94A.030 and RCW 9.94A.120] that the Legislature intended to clarify and interpret the statute to resolve any dispute concerning its actual meaning.

*State v. Riles*, 135 Wn.2d at 343 (footnotes omitted) (quoting *Ravsten v. Department of Labor & Indus.*, 108 Wn.2d 143, 150-51, 736 P.2d 265 (1987)).

During the last legislative session the Legislature unanimously passed a bill amending RCW 9.94A.150(1). The final legislative report states that the amendment is in response to the *Mahrle* decision. The report further states:

---

[8]Petitioner Smith argues he should receive credit toward his term of supervised community placement for any excess time he has spent in prison beyond his recalculated earned early release date. Because this argument was not raised in either Smith's personal restraint petition or his petition for review, we decline to reach it.

**Summary:** The statutory language relating to the 15 percent cap on good time for certain criminal convictions is clarified by adding commas to the sentence. The 15 percent cap applies to persons:

*convicted of a serious violent offense, or a sexual offense that is a class A felony, committed on or after July 1, 1990 . . . .*

This language is intended to clarify the Legislature's intention of the earned early release time statute by stating:

- no more than 15 percent of the sentence may be reduced for <u>any</u> serious violent offenses;

- no more than 15 percent of the sentence may be reduced for class A sex offenses; and

- no more than 33 percent of the sentence may be reduced for all other felonies.

FINAL LEGISLATIVE REPORT, 56th Leg. 54 (Wash. 1999).

The fundamental goal of this court in construing any statute is to ascertain and give effect to the intent of the Legislature. *Ravenscroft v. Washington Water Power Co.*, 136 Wn.2d 911, 920, 969 P.2d 75 (1998); *Welch v. Southland Corp.*, 134 Wn.2d 629, 633, 952 P.2d 162 (1998). The intent of the original statute has been made clear by the Legislature's 1999 amendment. I would give effect to that intent by interpreting the statute to prohibit a reduction of more than 15 percent of a sentence for any violent offense and for any class A felony sex offense.