[No. 43835-2-I. Division One. April 24, 2000.]

PAUL GLASEBROOK, ET AL., *Appellants*, v. MUTUAL OF OMAHA INSURANCE COMPANY, *Respondent*.

*Richard E. Spoonemore* and *Jonathan P. Meier* of *Sirianni & Youtz*, for appellants.

*Michael B. King* and *Jeffrey Gingold* of *Lane Powell Spears Lubersky, L.L.P.*, for respondent.

COLEMAN, J. — Paul Glasebrook and Theresa Lamb sued Mutual of Omaha Insurance Company on behalf of a class of state residents who attempted to purchase health insurance after the insurer had ceased writing new policies. The plaintiffs sought a declaratory judgment finding that the insurer's refusal to accept new enrollees violated the guaranteed issue requirement in former RCW 48.43.035(1),[1] which provided that "[a]ll health carriers shall accept for enrollment any state resident within the carrier's service area and provide or assure the provision of all covered services regardless of age, sex, family structure, ethnicity, race, health condition, geographic location, employment status, socioeconomic status, other condition or situation, or the provisions of RCW 49.60.174(2)." The trial court dismissed the suit, ruling that the statute did not apply to health carriers that retained existing accounts in Washington but were no longer writing new business. We affirm.

## ANALYSIS

■ The trial court dismissed the plaintiffs' suit under CR 12(b)(6) on the ground that the plaintiffs failed to state a claim upon which relief could be granted. Thus, for the purposes of our analysis, we presume the facts alleged in the complaint to be true. *Tenore v. AT&T Wireless Servs.*, 136 Wn.2d 322, 330, 962 P.2d 104 (1998), *cert. denied*, 525 U.S. 1171 (1999). The plaintiffs alleged that Mutual of Omaha stopped issuing new individual health insurance polices without authorization from the insurance commissioner and claimed that Mutual of Omaha's decision to cease writing new policies violated former RCW 48.43-.035(1). They also contended that the insurer's failure to comply with the statute violated the Consumer Protection

---

[1]The Legislature recently amended the statute to apply only to group health benefit plans. *See* E2SSB 6067, 56th Leg., Reg. Sess. § 24 (2000).

Act and requested an injunction against future violations, damages, and attorney fees.

 We review the trial court's interpretation of the statute and ruling on the motion to dismiss de novo. *See Morgan v. Johnson*, 137 Wn.2d 887, 891, 976 P.2d 619 (1999); *Cutler v. Phillips Petroleum Co.*, 124 Wn.2d 749, 755, 881 P.2d 216 (1994). Our purpose in construing a statute is to determine and give effect to legislative intent. *In re Personal Restraint of Smith*, 139 Wn.2d 199, 203, 986 P.2d 131 (1999). In general, the Legislature's intent is taken from what it said. *Smith*, 139 Wn.2d at 204; *Morgan*, 137 Wn.2d at 891-92.

The Legislature first enacted a guaranteed issue requirement as part of the Washington health services act of 1993, legislation that was intended to provide the foundation for a long-term, comprehensive reform of the state's health care system.[2] The act contained a broad package of reforms intended to stabilize health services costs, including a standardized minimum benefits package (former RCW 43.72-

---

[2] The findings and statement of intent accompanying the act indicate that the Legislature was concerned with rising health care expenditures and the availability of health insurance for state residents. Section 102(2) of chapter 492, LAWS OF 1993, provides:

The legislature intends that:
(a) Total health services costs be stabilized and kept within rates of increase similar to the rates of personal income growth within a publicly regulated, private marketplace that preserves personal choice;
(b) State residents be enrolled in the certified health plan of their choice that meets state standards regarding affordability, accessibility, cost-effectiveness, and clinical efficaciousness;
(c) State residents be able to choose health services from the full range of health care providers . . . in a manner consistent with good health services management, quality assurance, and cost effectiveness;
(d) Individuals and businesses have the option to purchase any health services they may choose in addition to those included in the uniform benefits package or supplemental benefits;
(e) All state residents, businesses, employees, and government participate in payment for health services, with total costs to individuals on a sliding scale based on income to encourage efficient and appropriate utilization of services;
(f) These goals be accomplished within a reformed system using private service providers and facilities in a way that allows consumers to choose among competing plans operating within budget limits and other regulations that promote the public good[.]

.130 (1994) (uniform benefits package)), mandatory coverage and participation (former RCW 43.72.120, 43.72.210, 43.72.220), community-rated premiums capped by the state health services commission (former RCW 43.72.100(1)-(2), 43.72.170(1)), coverage for preexisting health conditions and portability requirements (former RCW 43.72.100(5), 43.72.120(6), 43.72.130(3), former RCW 48.44.480, former RCW 48.46.550) and guaranteed issue and renewability (former RCW 43.72.100(3), former RCW 48.44.490, former RCW 48.46.560).

The guaranteed issue provisions in the 1993 legislation applied only to certified health plans (CHPs) providing the uniform benefits package. Former RCW 43.72.100 provided:

A certified health plan shall:

(1) Provide the benefits included in the uniform benefits package to enrolled Washington residents for a prepaid per capita community-rated premium not to exceed the maximum premium established by the commission and provide such benefits through managed care in accordance with rules adopted by the commission;

(2) Offer supplemental benefits to enrolled Washington residents for a prepaid per capita community-rated premium and provide such benefits through managed care in accordance with rules adopted by the commission;

(3) *Accept for enrollment any state resident within the plan's service area and provide or assure the provision of all services within the uniform benefits package and offer supplemental benefits regardless of age, sex, family structure, ethnicity, race, health condition, geographic location, employment status, socioeconomic status, other condition or situation, or the provisions of RCW 49.60.174(2).* The insurance commissioner may grant a temporary exemption from this subsection, if, upon application by a certified health plan, the commissioner finds that the clinical, financial, or administrative capacity to serve existing enrollees will be impaired if a certified health plan is required to continue enrollment of additional eligible individuals[.]

(Emphasis added.)[3] The 1993 reforms also provided for mandatory participation by individual residents in the CHP system and prohibited noncertified plans from providing the uniform benefits package. Former RCW 43.72.090, 43.72-.100, 43.72.210(1).

In 1995, the Legislature repealed the CHP system and the requirements for mandatory coverage. It retained a guaranteed issue requirement, however, in former RCW 48.43.035(1). That statute provided:

> All health carriers shall accept for enrollment any state resident within the carrier's service area and provide or assure the provision of all covered services regardless of age, sex, family structure, ethnicity, race, health condition, geographic location, employment status, socioeconomic status, other condition or situation, or the provisions of RCW 49.60.174(2). The insurance commissioner may grant a temporary exemption from this subsection, if, upon application by a health carrier the commissioner finds that the clinical, financial, or administrative capacity to serve existing enrollees will be impaired if a health carrier is required to continue enrollment of additional eligible individuals.[4]

The plaintiffs contend that this provision prohibited Mutual of Omaha from suspending sales of its individual products without obtaining authorization or a temporary

---

[3]The 1993 legislation also required registered employer health plans to "[p]rovide or assure the provision of all services within the uniform benefits package and offer supplemental benefits regardless of age, sex, family structure, ethnicity, race, health condition, socioeconomic status, or other condition or situation[.]" Former RCW 43.72.120(4).

[4]The administrative regulations essentially mirrored the statute. WAC 284-43--720(1) provided:

"**Guaranteed issue and restrictions on the denial, exclusion, or limitation of health benefits for preexisting conditions.** (1) All health carriers shall accept for enrollment any state resident within the carrier's service area and provide or assure the provision of all covered services regardless of age, sex, family structure, ethnicity, race, health conditions, geographic location, employment status, socioeconomic status, other conditions or situation, or HIV status. Thus, health carriers may not reject health plan applicants and may not limit or exclude plan coverage for any reason associated with health risk or perceived health risk except for the imposition of a preexisting condition exclusion as permitted in this chapter."

exemption from the insurance commissioner. They argue that with the 1995 reforms and particularly the repeal of the CHP system, the Legislature intended to increase health care coverage for individual, underinsured residents by requiring all health carriers doing business in the state to share the burden of providing such coverage. The plaintiffs note that under an exception to the statute, the guaranteed issue requirement does not apply when a carrier has zero enrollment on a product. *See* RCW 48.43-.035(4)(a). The plaintiffs further contend that this provision implies that a carrier is not exempt from compliance with the statute when it has any existing enrollees on a product.

Mutual of Omaha responds that the guaranteed issue requirement did not prevent a health carrier from suspending its sales of a product, but rather limited a carrier's ability to discriminate against new applicants in writing new business. The insurer also raises constitutional arguments against the plaintiffs' interpretation of the statute based on the Fourteenth Amendment of the United States Constitution and article I, section 3 of our State Constitution. Because we resolve this appeal on the statutory ground presented, we do not reach the insurer's constitutional claims. *See Anderson v. City of Seattle*, 123 Wn.2d 847, 853, 873 P.2d 489 (1994).

■■ We agree that the provisions cited by the plaintiff required all health carriers to enroll state residents within their service area without regard to any of the prohibited risk or other demographic factors listed. But neither provision indicates whether this requirement applies when, as here, a carrier has ceased offering a product. The plaintiffs contend that in this situation, the statute requires an insurer to obtain permission from the insurance commissioner before discontinuing its sales. But we reiterate that the provisions relied on by the plaintiffs do not impose this requirement, nor do they prohibit the actions taken by Mutual of Omaha in this case. While debatable arguments have been raised regarding how one should read the stat-

ute, nothing in the language employed would permit us to ascribe to the Legislature this intent. Generally, we do not infer a prohibition absent specific language to that effect, unless the statute as a whole directs that conclusion. *See In re Custody of Smith*, 137 Wn.2d 1, 12, 969 P.2d 21 (1998), *cert. granted, Troxel v. Granville*, 527 U.S. 1069, 120 S. Ct. 11 (1999); *accord Jenkins v. Bellingham Mun. Court*, 95 Wn.2d 574, 579, 627 P.2d 1316 (1981).

Recent legislation in fact makes clear the Legislature's intent that the provisions in former RCW 48.43.035(1), as reflected in the 1995 statute, should not be construed to prevent health carriers from suspending sales of a product to all new applicants. The new legislation provides:

> (1) Except as required in RCW 48.21.045, 48.44.023, and 48.46.066, nothing in this title shall be construed to require a carrier, as defined in RCW 48.43.005, to offer any health benefit plan for sale.
>
> (2) Nothing in this title shall prohibit a carrier as defined in RCW 48.43.005 from ceasing sale of any or all health benefit plans to new applicants if the closed plans are closed to all new applicants.
>
> (3) This section is intended to clarify, and not modify, existing law.

E2SSB 6067, 56th Leg., Reg. Sess. § 40 (2000). We have held that when an amendment clarifies existing law and does not contravene previous constructions of the law, the amendment may be deemed curative, remedial, and retroactive. *See, e.g., City of Des Moines v. Puget Sound Regional Council*, 98 Wn. App. 23, 32, 988 P.2d 27 (1999). The Legislature has thus made clear that it did not intend the guaranteed issue requirement to prohibit the actions taken by the insurer here.

For the reasons discussed above, we conclude that the trial court did not err in dismissing the plaintiffs' claims based on violations of RCW 48.43.035(1), and we affirm. Both parties have moved to strike portions of the briefing

and additional material that was submitted on appeal. We deny the motions to strike but, as indicated above, find that much of the challenged material does not affect our analysis of the statute.

AGID, C.J., and GROSSE, J., concur.