74 P.3d 115 (2003)
149 Wash.2d 827
Certified from the United States District Court for the Western District of Washington
Shulamit GLAUBACH; Dawn Merydith; Kristen Tsiatsios; and all persons similarly situated, Plaintiffs,
v.
REGENCE BLUESHIELD, a Washington corporation, Defendant.
No. 73415-1.
Supreme Court of Washington, En Banc.
Argued May 6, 2003.
Decided July 17, 2003.
Sandeep Baweja, Los Angeles, CA, Matthew Phineas Bergman, Bergman Senn Pageler & Frockt, Vashon, Steve W. Berman, Erin K. Flory, Hagens Berman LLP, Seattle, Deborah Senn, Seattle, for Plaintiffs.
Stephania Camp Denton, Gretchen Graham Salazar, David Donald Swartling, Mills Meyers Swartling, Seattle, for Defendant.
CHAMBERS, J.
We have been asked by the United States District Court for the Western District of Washington to determine whether two state health care statutes require coverage of prescriptive contraceptives. We conclude they do not.

CERTIFIED QUESTION
Did Regence BlueShield's failure to provide coverage for all methods of prescription contraception approved by the United States Food and Drug Administration violate *116 RCW 48.43.018(3) and/or RCW 48.43.035(1)?
Certification Order at 1 (Jan. 6, 2003).

FACTS
Plaintiffs Shulamit Glaubach and Dawn Merydith seek damages on a variety of theories from Regence BlueShield (Regence) for historically failing to provide coverage for prescription contraceptives in its group and individual health care plans. The underlying case is currently pending in federal district court. Both Glaubach and Merydith had health insurance through Regence: Glaubach purchased an individual plan; Merydith's employer provided a group plan. Neither plan provided coverage for all United States Food and Drug Administration (FDA) approved prescription contraception, though Merydith's plan did cover oral contraceptives.
At roughly the same time, the Office of the Insurance Commissioner (OIC) began the process that culminated in the promulgation of a regulation that effectively requires contraceptive coverage in otherwise comprehensive health plans. See former WAC 284-43-821 (2000), repealed by St. Reg. XX-XX-XXX (Oct. 6, 2001), recodified as amended at WAC 284-43-822. Also during this time, the federal district court held that the failure to include prescription contraceptives in an otherwise comprehensive health plan violated Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k). Erickson v. Bartell Drug Co., 141 F.Supp.2d 1266 (2001). Regence is currently providing prescription contraception in all comprehensive plans.
Before us is only whether the failure to provide all forms of FDA approved prescription contraception violates RCW 48.43.018(3) or RCW 48.43.035(1) of the insurance reform act. This act replaced and largely repealed the comprehensive health care reforms enacted by our state legislature in 1993, which had attempted to bring health care to all Washington residents. Laws of 1995, ch. 265; see generally Pamela A. Paul Shaheen, The States and Health Care Reform: The Road Traveled and Lessons Learned from Seven That Took the Lead, 23 J. Health POL., POL'Y & L. 319 (1998).

ANALYSIS
We begin with the statutes.
Requirement to complete the standard health questionnaireExemptionsResults.
. . . .
(3) If the person applying for an individual health benefit plan: (a) Does not qualify for coverage under the Washington state health insurance pool based upon the results of the standard health questionnaire; (b) does qualify for coverage under the Washington state health insurance pool based upon the results of the standard health questionnaire and the carrier elects to accept the person for enrollment; or (c) is not required to complete the standard health questionnaire designated under this chapter under subsection (1)(a) or (b) of this section, the carrier shall accept the person for enrollment if he or she resides within the carrier's service area and provide or assure the provision of all covered services regardless of age, sex, family structure, ethnicity, race, health condition, geographic location, employment status, socioeconomic status, other condition or situation, or the provisions of RCW 49.60.174(2). The commissioner may grant a temporary exemption from this subsection if, upon application by a health carrier, the commissioner finds that the clinical, financial, or administrative capacity to serve existing enrollees will be impaired if a health carrier is required to continue enrollment of additional eligible individuals.
RCW 48.43.018 (emphasis added).
Group health benefit plansGuaranteed issue and continuity of coverageExceptions. For group health benefit plans, the following shall apply:
(1) All health carriers shall accept for enrollment any state resident within the group to whom the plan is offered and within the carrier's service area and provide or assure the provision of all covered services regardless of age, sex, family *117 structure, ethnicity, race, health condition, geographic location, employment status, socioeconomic status, other condition or situation, or the provisions of RCW 49.60.174(2). The insurance commissioner may grant a temporary exemption from this subsection, if, upon application by a health carrier the commissioner finds that the clinical, financial, or administrative capacity to serve existing enrollees will be impaired if a health carrier is required to continue enrollment of additional eligible individuals.
RCW 48.43.035 (emphasis added). The confusion in this case comes from the arguable ambiguity of the term "covered services." In simplest terms, Regence argues that the two statutes require them to accept any qualified applicant for insurance regardless of age, sex, and other listed conditions, but does not require any particular benefit to be offered. Regence concedes it is required to offer the same schedule of benefits to every person covered by a particular plan. It contends that the underlying purpose of these statutes is to prevent health carriers from excluding any particular demographic from coverage and to eliminate individual underwriting.
Glaubach argues that these statutes go a significant step further than prohibiting exclusion of individuals or demographics. Glaubach argues that a health carrier may not, by sculpting of the policy's coverage, do what it is prohibited from doing through enrollment exclusions. Particularly, Glaubach argues that the statutes impose a substantive obligation on those health carriers that provide a general prescription benefit to also specifically include all FDA approved contraceptive drugs and devices. Glaubach contends that the failure to cover all FDA approved contraceptives constitutes discrimination within "covered services" in violation of these two statutes.

PLAIN LANGUAGE
The plain language of these statutes does not answer the question presented. "All health carriers shall ... provide or assure the provision of all covered services regardless of ... sex" may be read consistently with both parties' theories of the case. RCW 48.43.035(1); cf. RCW 48.43.018(3). "Covered services" is not defined by the organic statute or implementing regulations. OIC regulations do state that health carriers "may not limit or exclude plan coverage" for reasons related to sex. See, e.g., WAC 284-43-720(1). However, again, this regulation may be read consistent with either party's contentions. Other agencies definitions of this term in the context of different statutes are not helpful to this court's analysis. Therefore, we turn to other aids to statutory interpretation. See, e.g., Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 9-10, 43 P.3d 4 (2002).

LEGISLATIVE HISTORY
Since this court's primary objective in interpreting statutes is to determine and implement legislative intent, we turn to the history of these statutes. Campbell & Gwinn, 146 Wash.2d at 9, 43 P.3d 4. They have their roots in 1986 legislation which restricted the power of insurance carriers to terminate health benefits enjoyed by insureds. Former RCW 48.44.410 (1986), repealed by Laws of 1993, ch. 492, § 293. Prior to this time, insurance companies enjoyed the right to terminate or refuse coverage because of preexisting conditions. As part of the 1993 health care reform, the legislature required that all health carriers cover all eligible persons (eligibility was typically geographical) for all "services within the uniform benefits package." Former RCW 43.72.100 (1993), repealed by Laws of 1995, ch. 265, § 27. "Services within the uniform benefits package" was a term of art and referred to a schedule of services determined by the State to be necessary. Health carriers had the option of offering additional services, but were required to offer them to all persons, regardless of a list of characteristics, including sex. See former RCW 43.72.120(4), .130 (1993), repealed by Laws of 1995, ch. 265, § 27; Glasebrook v. Mut. of Omaha Ins. Co., 100 Wash.App. 538, 543 n. 3, 997 P.2d 981 (2000).
The 1995 legislature repealed much of the earlier health care reform legislation. However, the legislature retained the requirement *118 that health carriers offer insurance without discrimination on the basis of sex, as well as other enumerated characteristics, in RCW 48.43.018 and .035. See Laws of 1995, ch. 265, §§ 7, 16; see also Glasebrook, 100 Wash.App. at 542-43, 997 P.2d 981. Individual premiums may be adjusted within a community only on the basis of limited and enumerated demographics, not individual conditions, risks, or gender. RCW 48.20.028(1); see also RCW 48.21.045; RCW 48.44.022. The statutes through all of their permutations show a clear intent to require health carriers to cover all eligible applicants regardless of individual risk factors or most demographic characteristics. We find nothing in the legislative history that indicates the legislature contemplated contraceptive coverage in these two statutes.

ABSURD CONSEQUENCES
We avoid readings of statutes that result in unlikely, absurd, or strained consequences. State v. Neher, 112 Wash.2d 347, 351, 771 P.2d 330 (1989). "The spirit or purpose of an enactment should prevail...." State v. Day, 96 Wash.2d 646, 648, 638 P.2d 546 (1981). Glabauch argues that because Regence's plan contains a general prescription drug benefit, it must offer all prescription drugs approved by the FDA or else violate the statute. If "prescription drugs" is a "covered service," she reasons, to exclude any prescription that has a greater utility for one sex or the other is prohibited. The major difficulty we find in accepting her proposition is the ultimate scope. Under this reasoning, if a plan covered any prescription drug, it must cover nearly all prescription drugs because discrimination based on "health condition" is also prohibited. In essence, this reasoning would require every plan to offer every service, and that does not accord with the general flexibility health insurers have to tailor plans to meet different needs and different resources.
Further, we find no evidence that the legislature considered a category as broad as "prescription drugs" to be a covered service. Instead, it appears to us that "covered services" refers to more specific services offered as a part of the health plan, rather than this broad category. Cf. WAC 284-43-820.

OIC INTERPRETATION
Glaubach argues that the OIC's promulgation of WAC 284-43-822 is persuasive authority that RCW 48.43.018 and .035 require contraceptive coverage. This court does give great weight to the interpretation of statutes laid down by the executive agency charged with enforcement. Marquis v. City of Spokane, 130 Wash.2d 97, 111, 922 P.2d 43 (1996). However, we are unconvinced that WAC 284-43-822 is an interpretation of RCW 48.43.018 and RCW 48.43.035.
The OIC listed 31 statutes as establishing its authority to promulgate this rule. See note following WAC 284-43-822.[1] RCW 48.43.035 is listed as one of these statutes; RCW 48.43.018 is not. The administrative history does not dwell on section .018, instead it focuses on the underlying availability of and need for contraception. See, e.g., St. Reg. XX-XX-XXX, Proposed Rules (July 18, 2001). The OIC itself explained when proposing the regulation:
Carriers need guidance on how to comply with state and federal laws that prohibit sex discrimination in insurance transactions and health plan benefits. There are a number of state and federal laws that prohibit sex discrimination in health insurance benefits, including but not limited to contraceptive health care services. The laws include 42 U.S.C.2000 and chapter 49.60 RCW, in addition to provisions of the state insurance code.
St. Reg XX-XX-XXX. The OIC also stated that the rule merely "restates that it is an unfair practice for any health carrier to restrict, exclude, or reduce coverage or benefits under any health plan on the basis of sex.... *119 Health plans are not currently allowed to discriminate unfairly based on sex." Id. Glaubach correctly notes that the commissioner stated clearly that this rule "imposed no new duties" on health carriers because "[c]urrently, unfair discrimination based on sex is prohibited in insurance statutes." Id.
However, this rule must be seen against the backdrop of the broader law. A preexisting regulation already forbade sex discrimination in insurance plans. WAC 284-43-720(1). Also, a federal trial court had recently held that federal law requires health carriers to cover prescription contraception. Erickson, 141 F.Supp.2d 1266. Other sources of authority undergird this regulation.[2]

CONCLUSION
Accordingly, we answer the certified question in the negative. We do not reach other statutory or constitutional grounds which might provide relief to the plaintiffs.
ALEXANDER, C.J., and JOHNSON, MADSEN (result only), SANDERS, IRELAND, BRIDGE, OWENS, and FAIRHURST, JJ., concur.
NOTES
[1] Authority: RCW 48.02.060,
48.18.480, 48.20.450, 48.20.460, 48.21.045,
48.30.010, 48.30.300, 48.41.110, 48.41.170,
48.42.010, 48.42.040, 48.42.100, 48.43.012,
48.43.025, 48.43.035, 48.43.041, 48.43.115,
48.43.520, 48.44.020, 48.44.023, 48.44.050,
48.44.220, 48.46.060, 48.46.066, 48.46.110,
48.46.200, 49.60.010, 49.60.030, 49.60.120,
49.60.178, 49.60.220.

[2] We declined to accept amicus briefs in this case because they raised constitutional issues outside the strict scope of the certified question. We are restricted in our review to the four corners of the question. See Broad v. Mannesmann Anlagenbau, A.G., 141 Wash.2d 670, 676, 10 P.3d 371 (2000). Accordingly, we do not consider whether article XXXI of the state constitution would require us to read related statutes, such as RCW 48.44.220, RCW 49.12.175, RCW 48.30.300, or chapter 49.60 RCW in conjunction with the statutes before us in a way that might dictate a different result. Nor do we consider whether insurance companies are implicitly forbidden from offering plans that effectively exclude clients for reasons forbidden by RCW 48.43.018 and .035.