Honorable Joyce Mulliken State Senator, 13th District P.O. Box 40413 Olympia, WA 98504-0413
Honorable Mark Miloscia State Representative, 30th District P.O. Box 40600 Olympia, WA 98504-0600
Dear Senator Mulliken and Representative Miloscia:
By letter previously acknowledged, you have asked for an opinion on the following questions:
 1. What are the statutory and constitutional rights of religious employers with respect to the state mandating the purchase of contraceptive coverage?
 2. Does WAC 284-43-822 supersede those rights?
 BRIEF ANSWER
Under RCW 48.43.065(3), no individual or organization with a religious or moral tenet opposed to a specific health service may be required to purchase coverage for that service if the individual or organization objects to doing so for reason of conscience or religion.
[original page 2] RCW 48.43.065(3)(a) is not superseded by WAC 284-43-822, which was promulgated by the insurance commissioner pursuant to RCW 48.30.010 and .300 relating to "unfair practices" with respect to the business of insurance. When read together, however, the WAC and statutes operate to constrain one way in which employers might otherwise exercise their conscience option under RCW 48.43.065(3).
To the extent you are asking whether employers have a state or federal constitutional right to offer health coverage to employees that generally includes prescription drug coverage but excludes coverage of contraceptives, we are not in a position to address this issue because, as explained below, to do so would be to comment (at least indirectly) on the constitutionality of Washington's existing statutes.
 ANALYSIS 1. What are the statutory and constitutional rights ofreligious employers with respect to the state mandating thepurchase of contraceptive coverage?
Your questions are about the interplay between RCW 48.43.065
and certain other statutes and rules. RCW 48.43.065 provides that health care providers, religiously sponsored health carriers, and employers may refrain from providing (or paying for) services to which they have a religious or moral objection. On the other hand, it also provides that enrollees are entitled to receive the full range of services covered under their health plan.[1]
Thus, the statute includes the following language:
 Therefore, while recognizing the right of conscientious objection to participating in specific health services, the state shall also recognize the right of individuals enrolled with plans containing the basic health plan services to receive the full range of services covered under the plan.
RCW 48.43.065(1).
Subsection (2) of RCW 48.43.065 concerns individual health care providers, religiously sponsored health carriers, and health care facilities. This subsection provides that none of these organizations "may be required by law or contract in any circumstances to participate in the provision of payment for a specific service if they object to so doing for reason of conscience or religion." RCW 48.43.065(2)(a). The subsection goes on to provide, however, that its provisions "are not intended to result in an enrollee being denied timely access to any service included in the basic health plan services" and, to that end, requires each health carrier to provide notices and information to enrollees describing how enrollees may access services in an expeditious manner. RCW 48.43.065(2)(b). This subsection also authorizes the insurance commissioner to "establish by rule a mechanism or mechanisms to recognize the right to exercise conscience while ensuring enrollees timely access to services and to assure prompt payment to service providers." RCW48.43.065(2)(c).
[original page 3] Subsection (3) of the statute concerns the rights of employers and employees. First, it provides that:
 No individual or organization with a religious or moral tenet opposed to a specific service may be required to purchase coverage for that service or services if they object to doing so for reason of conscience or religion.
RCW 48.43.065(3)(a). However, subsection (3)(b) provides that the statute "shall not result in an enrollee being denied coverage of, and timely access to, any services or services" excluded from an employee benefits package as a result of the exercise of the "conscience clause" set forth above. This subsection also contains language providing that the insurance commissioner "shall define by rule the process through which health carriers may offer the basic health plan services to individuals and organizations identified in (a) and (b) of this subsection". RCW 48.43.065(c).
Finally, RCW 48.43.065 contains a subsection (4), which provides that, "Nothing in this section requires a health carrier, health care facility, or health care provider to provide any health care services without appropriate payment of premium or fee."
We discussed this statute at some length in an earlier opinion, AGO 2002 No. 5. In that opinion, we were asked to construe RCW48.43.065 in light of RCW 48.30.300(1), which prohibits any person or entity engaged in the insurance business from refusing to issue insurance, or canceling insurance previously provided, based (among other factors) on sex or marital status. In the earlier opinion, we noted state case law, as well as federal statutes and case precedents, holding that practices that result in disparate treatment of females, such as denial of unemployment benefits to pregnant women, constitute discrimination on the basis of sex. AGO 2002 No. 5, discussion at 5-7. Based on those precedents, we concluded in the 2002 opinion that providing prescription drug benefits in general, but denying benefits for contraceptives, would disparately impact women[2] and would therefore constitute an unfair practice under the insurance statutes (RCW 48.30.300, .010) and might well also violate various provisions of federal law. AGO 2002 No. 5, at 7.
Your opinion request does not directly ask us to reconsider the conclusions in AGO 2002 No. 5, but it does suggest that the 2002 opinion did not focus on the right of an employer to decline to purchase coverage for a specific health care service if the employer objects based on religious or moral tenets. Rather, the 2002 opinion focused on the right of individual employees to be free from discrimination in the provision of health care coverage based on sex. Thus, your opinion request suggests, the 2002 opinion appears to conclude that the "conscience clause" rights of employers are superseded or "trumped" by the "unfair practice" provisions in WAC 284-43-822 and the statutes authorizing this rule. You ask whether it is true that the administrative rule supersedes the statutory rights granted to religious employers, which may also be constitutional rights.
[original page 4] We have reviewed AGO 2002 No. 5, and we note that this opinion did focus on the right of employees to receive coverage for contraceptives without payment of an additional premium or charge when an employer provides health care coverage that generally includes prescription coverage but specifically excludes coverage of contraceptives. In AGO2002 No. 5, we were asked whether a health carrier could charge individual employees an additional amount to cover the cost of including prescription contraceptives in an employee health care package, where the employer — for reason of conscience — has declined to pay for such coverage, citing RCW 48.43.065(3). We concluded that it would be an unfair practice for the carrier to charge theemployees to recoup the additional cost of includingcontraceptive coverage. We did not directly conclude that the employers would violate the law by declining to pay for contraceptives for their employees — only that health carriers could not lawfully enter into contracts agreeing to provide prescription drug coverage in general but requiring the employees either to forego coverage of contraceptives or to pay for it themselves.[3]
The upshot of our 2002 analysis is that, while employers may exercise their "conscience clause" rights under RCW 48.43.065(3), they may not do so by contracting with a state-regulated health carrier for a benefits package that excludes contraceptives while including coverage of other prescription drugs, or a package requiring employees to pay for their own contraceptive coverage. There may be other, lawful ways in which employers may exercise their "conscience clause" option. Clearly, for instance, they can offer a health care package to their employees that simply does not include payment for prescription drugs. Perhaps they might also offer a health care benefits plan that does not involve purchasing a health plan from a state-regulated health carrier. An Attorney General's Opinion is not an appropriate vehicle to examine how that might be done as a matter of employment and insurance practices, or whether there would be legal pitfalls in any particular approach. We simply note that the statutes and WAC do not foreclose the exercise of "conscience clause" rights by employers.
RCW 48.43.065 expressly provides employers the right to decline to purchase health coverage that would violate their religious beliefs and conscience. We must decline to comment on whether the statute provides less protection to employers than would constitutionally be required. Statutes are presumed constitutional, and it is our responsibility to defend legislative enactments against constitutional challenge. For these reasons, we are not in a position to opine on the constitutionality of existing statutes.
2. Does WAC 284-43-822 supersede those rights?
As noted above, WAC 284-43-822 was promulgated by the insurance commissioner pursuant to his authority under RCW 48.30.010 and .300. We do not read WAC 284-43-822 as [original page 5]
mandating any employer to pay for prescription contraceptives for employees. The opening language of the rule provides as follows:
 It is an unfair practice for any health carrier to restrict, exclude, or reduce coverage or benefits under any health plan on the basis of sex. By way of example, a health plan providing generally comprehensive coverage of prescription drugs and prescription devices restricts, excludes, or reduces coverage or benefits on the basis of sex if it fails to provide prescription contraceptive coverage that complies with this regulation.
WAC 284-43-822(1) (italics added).[4] If an employer does not provide "generally comprehensive coverage of prescription drugs or prescription devices," the rule does not apply, nor does the rule contain any language mandating that all employers provide prescription drug coverage to their employees. Furthermore, as noted above, the rule applies to "health carriers" and not directly to employers. Thus, we do not read the rule in question as "superseding" the conscience clause rights granted in RCW 48.43.065(3), although the rule constrains one way in which those statutory rights otherwise might be exercised. As AGO 2002 No. 5 reflects, RCW 48.43.065(2)(c) and (3)(c) give the insurance commissioner the responsibility to devise processes appropriate to implement the guarantees of the statute.
To summarize, RCW 48.43.065 is designed to give certain "conscience clause" rights to employers and health carriers but also to maintain access of individual employees to a full range of health care service. WAC 284-43-822 is not designed to "supersede" any of the statutory rights granted, but it is simply one provision among many that balance the various rights recognized in relevant statutes.
We trust the foregoing will prove useful to you.
Sincerely,
ROB McKENNA Attorney General
JAMES K. PHARRIS Deputy Solicitor General
:pmd
[1] The full text of RCW 48.43.065 is attached to this opinion as an Appendix.
[2] AGO 2002 No. 5 was based on the factual assumption that the only prescription contraceptives on the market are for women. It appears that this assumption still holds today.
[3] AGO 2002 No. 5 concerned a proposed contractual arrangement between an employer and a health carrier in Washington. We concluded that the proposed arrangement would be contrary to state law. The 2002 opinion does not specifically consider whether an employer in Washington may exercise "conscience clause" rights where there is no contract with a Washington health carrier, although we did note that such arrangements might violate certain federal laws that bar sex-based discrimination.
[4] There are no Washington cases addressing the question of whether, prior to the enactment of WAC 284-43-822, the unfair discrimination and practice provisions in RCW 48.30.300 and48.30.010 would have required health carriers to include contraceptives as part of comprehensive drug coverage. InGlaubach v. Regence Blue Shield, 149 Wn.2d 827, 74 P.3d 115
(2003), the Supreme Court, in answering a certified question from the federal district court, held that it was not a violation of different statutes (RCW 48.43.018(3) or 48.43.035(1)) for a health carrier to fail to provide all forms of FDA-approved prescription contraception. The Court explicitly rejected the invitation to consider whether the excluded contraceptive coverage was required by RCW 48.30.300, because the issue was outside the scope of the certified question.