134 P.3d 1176 (2006)
132 Wash.App. 640
In re the Matter of the PERSONAL RESTRAINT OF Dion Xavier ADAMS, Petitioner.
No. 54389-0-I.
Court of Appeals of Washington, Division 1.
May 1, 2006.
As Amended on Denial of Reconsideration July 18, 2006.
*1177 David Donnan, Washington Appellate Project, Seattle, for Appellant.
Alex Kostin, Attorney General's Office, Olympia, for Respondent.
SCHINDLER, A.C.J.
¶ 1 Dion Xavier Adams filed a personal restraint petition challenging the Department of Corrections' (DOC) determination that he is not eligible for the enhanced early release under a program in RCW 9.94A.728(1). As directed by the Legislature, DOC evaluated Adams in 2003 and determined he was eligible to earn early release under RCW 9.9A.728 (1)(b) for 50 percent of his sentence instead of the 33 percent maximum previously available. Three weeks before Adams' scheduled release in August 2004, DOC reviewed Adams' risk assessment and decided it did not adequately consider his long-time drug addiction, criminal and prison history and a number of other factors. DOC decided Adams was not eligible for early release under RCW 9.94A.728 and changed his release date from August 14, 2005 to January 5, 2006. Adams contends DOC's decision to review the previous risk assessment was not authorized by RCW 9.94A.728(1)(b). Adams also contends he was entitled to minimal due process before DOC changed its determination that he was eligible to earn early release under RCW 9.94A.728 and cancel his scheduled release date. Pro se, Adams argues DOC unlawfully retaliated against him because he exercised his constitutional right to access the courts. We conclude DOC has discretion to conduct more than one risk assessment under RCW 9.94A.728(1)(b) but before DOC cancels the release date for an inmate who DOC previously determined was eligible for early release under RCW 9.94A.728(1)(b), the inmate is entitled to minimal due process including notice and the opportunity to address any erroneous information that was the basis for the decision. We grant Adams' Personal Restraint Petition.[1]

FACTS
¶ 2 In 2000, Dion Xavier Adams was sentenced to 108 months for delivery of cocaine and conspiracy to deliver cocaine in violation of RCW 69.50.401A.[2] Prior to July 2003, inmates could receive at most, a 33 percent early release reduction in their sentence for good conduct, former RCW 9.94A.728 (2002). In 2003, the Legislature enacted Engrossed Substitute Senate Bill 5990 amending former RCW 9.94A.728.[3] RCW 9.94A.728(1)(b) allows an inmate, who DOC classifies in the two lowest risk categories, to qualify for earned early release at 50 percent of the sentence instead of the previous 33 percent. Whether an inmate is classified in the two lowest risk categories and qualifies for early release at 50 percent of his sentence, depends on the inmate's criminal history and DOC's risk assessment. There are four classification levels: RM-A, RM-B, RM-C, and RM-D. Only inmates whose DOC scores fall within classifications RM-C and RM-D qualify to earn early release time at 50 percent. RCW *1178 9.94A.728(1)(b) requires DOC to perform a risk assessment on every eligible inmate to determine eligibility for the enhanced early release program.
¶ 3 DOC uses the Level of Service Inventory-Revised (LSI-R) as the risk assessment instrument for classifying inmates under RCW 9.94A.728(1)(b). Based on the answers an inmate gives to the questions in the LSI-R together with the inmate's criminal history, and other information in the inmate's file, DOC calculates a risk assessment score. The score, in turn, determines the inmate's classification and whether the inmate is eligible for the enhanced early release program.
¶ 4 DOC performed a risk assessment of Adams in 2003 and decided he was qualified for the enhanced early release program under RCW 9.94A.728(1)(b).[4] In March 2004, DOC's Classification Review Committee reviewed the risk assessment and confirmed Adams was qualified for enhanced early release.
¶ 5 On June 14, 2004, Adams filed a personal restraint petition (PRP) asserting DOC miscalculated earned early release credits for the first year of his sentence by using 33 percent rather than 50 percent. In DOC's Response to Adams' PRP, DOC conceded it miscalculated Adams' earned early release credits. DOC stated the error had been corrected and Adams' scheduled early release date was August 14, 2004.
¶ 6 Three weeks before Adams' release date, DOC decided to review Adams' risk assessment as part of an on-going audit. DOC concluded Adams' previous risk assessment did not adequately take into account a number of factors including his criminal history and prison infraction record.[5] According to DOC, the following other factors were also not given appropriate weight: "`family history (absence of stable residence arrangements); absence of contact with pro-social individuals, and Adams' severe long-standing drug addiction starting in the early teens.'"[6] DOC changed Adams' LSI-R score making him ineligible to earn early release credits under RCW 9.94A.728(1)(b). DOC cancelled Adams' scheduled August 14, 2004 release date and set a new release date of January 5, 2006.
¶ 7 DOC then filed a Supplemental Response informing this court that after an audit of Adams' risk assessment, he was no longer qualified for early release under RCW 9.94A.728. Adams replied claiming DOC's decision to audit his risk assessment was in retaliation for his exercising his legal right to file a PRP.[7]
¶ 8 This court ordered counsel appointed to represent Adams and referred Adams' PRP to a panel.

ANALYSIS
¶ 9 When, as here, an inmate in a PRP challenges a decision from which he has had "no previous or alternative avenue for obtaining state judicial review," RAP 16.4(a) requires that he show he has been unlawfully restrained.[8] A restraint is unlawful if the *1179 challenged action is unconstitutional or violates the laws of the State of Washington. Liptrap, 127 Wash.App. 463, 469, 111 P.3d 1227 (2005); In re Personal Restraint of Dutcher, 114 Wash.App. 755, 758, 60 P.3d 635 (2002); RAP 16.4(c)(2), (6).

Risk Assessment
¶ 10 Adams asserts that the plain language in RCW 9.94A.728(1)(b)(iii) and (b)(iv) allows DOC to do a risk assessment only one time to determine whether an inmate qualifies for enhanced early release. Adams argues DOC's decision to review his previous risk assessment and reclassify him, is inconsistent with the statute. Adams also argues DOC's decision to use the LSI-R as a risk assessment instrument is inconsistent with the statute because it was designed as an on-going measure to assess risk over time.
¶ 11 The primary objective in construing a statute is to give effect to legislative intent. In re Personal Restraint of Smith, 139 Wash.2d 199, 203-04, 986 P.2d 131 (1999). Legislative intent is determined from the statutory language viewed "`in the context of the overall legislative scheme.'" Schrom v. Bd. for Volunteer Firefighters, 117 Wash.App. 542, 546, 72 P.3d 239 (2003) (quoting Subcontractors Suppliers Collection Servs. v. McConnachie, 106 Wash.App. 738, 741, 24 P.3d 1112 (2001)). In construing the statute, we avoid interpretations that are "forced, unlikely, or strained." Smith, 139 Wash.2d at 204, 986 P.2d 131. We also recognize that DOC must exercise its "delegated authority under the restraints of the statutes delegating the authority." State v. Brown, 142 Wash.2d 57, 62, 11 P.3d 818 (2000); see also McGuire v. State, 58 Wash.App. 195, 198, 791 P.2d 929 (1990) ("The power and authority of an administrative agency is limited to that which is expressly granted by statute or necessarily implied therein.").
¶ 12 RCW 9.94A.728(1)(b)(iii) and (iv) provide in pertinent part:
(iii) For purposes of determining an offender's eligibility under this subsection (1)(b), the department shall perform a risk assessment of every offender committed to a correctional facility operated by the department who has no current or prior conviction for a sex offense, a violent offense, a crime against persons as defined in RCW 9.94A.411, a felony that is domestic violence as defined in RCW 10.99.020, a violation of RCW 9A.52.025 (residential burglary), a violation of, or an attempt, solicitation, or conspiracy to violate, RCW 69.50.401 by manufacture or delivery or possession with intent to deliver methamphetamine, or a violation of, or an attempt, solicitation, or conspiracy to violate, RCW 69.50.406 (delivery of a controlled substance to a minor). The department must classify each assessed offender in one of four risk categories between highest and lowest risk.

(iv) The department shall recalculate the earned release time and reschedule the expected release dates for each qualified offender under this subsection (1)(b).

(v) This subsection (1)(b) applies retroactively to eligible offenders serving terms of total confinement in a state correctional facility as of July 1, 2003.[9]
¶ 13 Subsection (b)(iii) requires DOC to conduct "a" risk assessment of every eligible offender in a correctional facility. Use of "a," an indefinite article, rather than a definite article such as "the" indicates legislative intent that DOC conduct "at least" one risk assessment and does not limit DOC from conducting more than one risk assessment. State ex rel. Becker v. Wiley, 16 Wash.2d 340, 352, 133 P.2d 507 (1943). The other language Adams cites from RCW 9.94A.728(1)(b)(iv) that DOC "recalculate the earned release time and reschedule the expected release dates for each qualified offender," also does not mean DOC is limited to an initial risk assessment and classification. We conclude RCW 9.94A.728(1)(b) contains no language indicating the Legislature intended to limit DOC's discretion to perform only one risk assessment. Other language in the statute also supports our conclusion. RCW 9.94A.7281 states that "the changes to the maximum percentages of earned release time in chapter 379, Laws of 2003 do not *1180 create any expectation that the percentage of earned release time cannot be revised."
¶ 14 On this limited record, it also does not appear that DOC's use of the LSI-R is inconsistent with RCW 9.94A.728(1) or former RCW 9.94A.030(35). Although the Legislature requires DOC to perform a risk assessment and provides guidance in RCW 9.94A.030(35) as to the purpose and nature of the risk assessment, DOC is given discretion to select the appropriate risk assessment instrument. The Legislature in former RCW 9.94A.030(35) defines "risk assessment" as:
the application of an objective instrument supported by research and adopted by the department for the purpose of assessing an offender's risk of reoffense, taking into consideration the nature of the harm done by the offender, place and circumstances of the offender related to risk, the offender's relationship to any victim, and any information provided to the department by victims. The results of a risk assessment shall not be based on unconfirmed or unconfirmable allegations.
¶ 15 It appears the LSI-R is consistent with the requirements of former RCW 9.94A.030(35) and RCW 9.94A.728. In any event, DOC's decision to change Adams' LSI-R score making him ineligible for release under RCW 9.94A.728(1)(b) was not based on the LSI-R risk assessment instrument. DOC's decision was retrospective and based on its determination that insufficient weight was given to Adams' criminal and prison history and certain other factors in his file.

Due Process
¶ 16 Adams also contends minimal due process requires notice and a meaningful opportunity to address DOC's decision that the risk assessment was inaccurate before changing his score and making him ineligible for early release under RCW 9.94A.728. The State claims DOC's decision to review and change Adams' risk assessment three weeks before his scheduled release date did not deprive him of a protected liberty interest.
¶ 17 The Fourteenth Amendment to the United States Constitution prohibits governmental deprivation of "life, liberty, or property, without due process of law." U.S. Const. Amend, 14 § 1; Wash. Const. art. I, § 3. The threshold question is whether Adams was deprived of a protected liberty interest that warrants a due process determination of the reasons for canceling the tentative fixed release date. In re Personal Restraint of Cashaw, 123 Wash.2d 138, 143, 866 P.2d 8 (1994).
¶ 18 An inmate does not have a protected liberty interest in being released before serving the maximum sentence. Greenholtz v. Inmates of Neb. Penal & Correctional Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); In re Ayers, 105 Wash.2d 161, 164-66, 713 P.2d 88 (1986). And the initial decision to establish a tentative release date is discretionary and does not create a protected liberty interest. Monohan v. Burdman, 84 Wash.2d 922, 929, 530 P.2d 334 (1975). In addition, while an inmate has a statutory right to earned early release credits, there is no protected liberty interest to earn the maximum percentage of early release time under RCW 9.94A.728(1).[10] RCW 9.94A.728(1) provides:
Except as otherwise provided for in subsection (2) of this section, the term of the sentence of an offender committed to a correctional facility operated by the department may be reduced by earned release time in accordance with procedures that shall be developed and promulgated by the correctional agency having jurisdiction in which the offender is confined. The earned release time shall be for good behavior and good performance, as determined by the correctional agency having jurisdiction. The correctional agency shall not credit the offender with earned release credits in advance of the offender actually earning the credits. Any program established pursuant to this section shall allow an offender to earn early release credits for presentence incarceration.
RCW 9.94A.7281 also specifically states that:
The legislature declares that the changes to the maximum percentages of *1181 earned release time in chapter 379, Laws of 2003 do not create any expectation that the percentage of earned release time cannot be revised and offenders have no reason to conclude that the maximum percentage of earned release time is an entitlement or creates any liberty interest. The legislature retains full control over the right to revise the percentages of earned release time available to offenders at any time. This section applies to persons convicted on or after July 1, 2003.
¶ 19 But in Monohan, our Supreme Court held that once a tentative parole release date is established, an inmate is entitled to minimal due process before cancellation of that date. Monohan, 84 Wash.2d at 923, 530 P.2d 334. The Court ruled that setting a tentative parole release date creates a "potential conditional liberty" interest requiring minimum due process protection before it is changed. Monohan, 84 Wash.2d at 923, 927-28, 530 P.2d 334. See also In re Powell, 117 Wash.2d 175, 203, 814 P.2d 635 (1991). As in Monohan, we conclude that when DOC conducts an initial risk assessment under RCW 9.94A.728(1)(b)(iii), decides the inmate is eligible to earn early release at a rate of fifty per cent and then recalculates the earned release time and reschedules the inmate's expected release date under RCW 9.94A.728(1)(b)(iv), DOC must thereafter provide minimal due process to the inmate before changing his risk category to a level that allows him only to earn early release at a rate lower than fifty per cent.
¶ 20 The cases DOC relies on to argue that Adams does not have a protected liberty interest are distinguishable. The Court in In re Personal Restraint of Meyer, 142 Wash.2d 608, 623, 16 P.3d 563 (2001), held a due process right did not attach to the risk classification of sex offenders for purposes of registration and disclosure upon release because there was no liberty interest created by the registration and disclosure statutes. DOC's reliance on In re Personal Restraint of Lopez, 126 Wash.App. 891, 110 P.3d 764 (2005) is also misplaced. Although the facts in Lopez are strikingly similar, the legal argument was very different. In Lopez, the inmate relied on the doctrine of equitable estoppel to argue DOC could not reevaluate his risk assessment and change his classification. Id. at 896, 110 P.3d 764. While we decided Lopez could not establish equitable estoppel, Lopez did not argue and we did not address due process and whether there was a constitutionally protected liberty interest.
¶ 21 Here, as with the parole revocation in Monohan, DOC engaged in a retrospective review of Adams' criminal history and prison records in deciding to change the previous risk assessment score. DOC decided the earlier risk assessment did not adequately take into account certain factors in Adams' file. In particular, DOC noted Adams' "prison infraction record of many violent incidents and sexual `acting out', [sic] as well as the history of his numerous arrests and a conviction for promoting prostitution. The reviewer also found the following areas were not sufficiently considered and/or not given appropriate weight in the original assessment, family history (absence of stable residence arrangements); absence of contact with pro-social individuals, and Adams' severe long-standing drug addiction starting in the early teens."[11] Based on its review of Adams' file, DOC recalculated Adams' score making him ineligible and rescheduled his release date for January 5, 2006, based on earning early release credits at a rate of 33 percent instead of 50 percent.[12]
¶ 22 Minimal due process requires notice and an opportunity to be heard before a competent tribunal. In re Personal Restraint of Sinka, 92 Wash.2d 555, 565, 599 P.2d 1275 (1979).[13] In tailoring safeguards necessary to protect an inmate's interest, we must recognize "the legitimate institutional needs of assuring the safety of inmates and *1182 prisoners, avoiding burdensome administrative requirements that might be susceptible to manipulation." Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445, 454-55, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).
¶ 23 DOC seeks to protect the confidentiality of the risk assessment instrument it uses to help determine eligibility under RCW 9.94A.728(1)(b) because of the concern that disclosure would enable inmates to tailor their answers. But here, DOC's decision to change Adams' score and cancel his release date was retrospective in nature and based on information from Adams' file that he was entitled to review.
¶ 24 As in Sinka, the information relied on by DOC to change Adams' risk assessment score may not be accurate.
Considering the variety of documents in an inmate's file, it is conceivable that the file may contain erroneous information. Because data collection by penal institutions and the Parole Board may not be uniform, and because reports prepared for the Parole Board may frequently record the subjective impressions of caseworkers, the documents that are filed may often be misleading or inaccurate. . . . Courts in other jurisdictions have recognized the possibility of such inaccuracies in Parole Board files. . . . In addition to the allegations of petitioners, there is some evidence that Parole Board files in this state may likewise occasionally include misinformation.[14]
¶ 25 We conclude minimum due process requires written notice of the reasons DOC is seeking to change Adams' classification and an opportunity to challenge the facts DOC relied on from his files to reach that decision.[15]See Superintendent, 472 U.S. at 445, 454, 105 S.Ct. 2768; Wolff v. McDonnell, 418 U.S. 539, 557-58, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Sinka, 92 Wash.2d at 568, 599 P.2d 1275. An inmate is also entitled to access the relevant information in his file that DOC relies on to change its eligibility decision under RCW 9.94A.728(1)(b), but because of DOC's concerns, is not entitled to the risk assessment instrument. This approach will ensure accuracy of the factual basis for DOC's decision that an inmate no longer eligible for the enhanced early release program while preserving the confidentiality of DOC's risk assessment instrument.
¶ 26 Adams' Personal Restraint Petition is granted.
WE CONCUR: AGID and COLEMAN, JJ.
NOTES
[1] Because Adams' January 5, 2006 release date has presumably come and gone, we do not remand. For the same reason, we need not address Adams' retaliation claim. But we address the merits of Adams' argument concerning RCW 9.94A.728 because they are issues of continuing and substantial public interest. In re Detention of Chorney, 64 Wash.App. 469, 473-74, 825 P.2d 330 (1992).
[2] King County Superior Court, No. 98-1-05470-7SEA (delivery of cocaine); King County Superior Court, No. 99-C-01758-3SEA (conspiracy to deliver cocaine).
[3] Laws of 2003, ch. 379, § 1.
[4] RCW 9.94A.728(1)(b) "applies retroactively to eligible offenders serving terms of total confinement in a state correctional facility as of July 1, 2003." RCW 9.94A.728(1)(b)(v).
[5] According to a DOC Program Manager, Kevin Mauss, DOC randomly audits risk assessments to ensure accuracy and audits the risk assessments for inmates closest to release. Declaration of Kevin Mauss, Ex. 1 to Second Supplemental Response to the Department of Corrections.
[6] Declaration of Pamela Pruitt at 3, Ex. 1 to Supplemental Response of the Department of Corrections.
[7] In DOC's Second Supplemental Response, DOC stated it had followed established policies in auditing Adams' risk assessment.
[8] In re Personal Restraint of Liptrap, 127 Wash. App. 463, 469, 111 P.3d 1227 (2005). A petitioner is not required to prove the threshold requirements from In re Personal Restraint of Cook, 114 Wash.2d 802, 810, 814, 792 P.2d 506(1990) where as here, the inmate "has had no previous or alternative avenue for obtaining state judicial review." In re Personal Restraint of Cashaw, 123 Wash.2d 138, 148-49, 866 P.2d 8 (1994) (citing In re Cook, 114 Wash.2d at 809-12, 792 P.2d 506 (requiring petitioner, seeking collateral review, to show actual prejudice for constitutional issues and a complete miscarriage of justice for non-constitutional issues)); see also In re Pers. Restraint of Dutcher, 114 Wash.App. 755, 758, 760-61, 60 P.3d 635 (2002).
[9] RCW 9.94A.728(1)(b) (emphasis added).
[10] In re Personal Restraint of Gronquist, 138 Wash.2d 388, 397, 978 P.2d 1083 (1999); In re Personal Restraint Petition of Dutcher, 114 Wash. App. 755, 758, 760-61, 60 P.3d 635 (2002).
[11] Ex. 1 to Supplemental Response of the Department of Corrections, Declaration of Pamela Pruitt at 3.
[12] It is important to note that by the time DOC decided Adams was no longer eligible under RCW 9.94A.728(1)(b), he had earned nearly all the early release credits under RCW 9.94A.728(1)(b).
[13] These requirements are flexible, however, and depend on a balancing of the following factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
Sinka, 92 Wash.2d at 565, 599 P.2d 1275 (quoting Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), cited with approval in Mackey v. Montrym, 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979)). See also Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).
[14] Sinka, 92 Wash.2d at 567-68, 599 P.2d 1275 (citing Hearings on H.R. 13118 Before a Subcomm. of the House Comm. on the Judiciary, 92d Cong., 2d Sess., ser. 15, pt. 7, at 451-52, 460, 464 (1972) (testimony of Professor Willard Gaylin, Columbia University Law School); W. Parker, Parole: Origins, Development, Current Practices and Statutes 11 (rev. ed.1975); Note, Procedural Due Process in Parole Release Proceedings-Existing Rules, Recent Court Decisions, and Experience in the Prison, 60 Minn. L.Rev. 341, 362 nn. 112-13 (1976); Williams v. Missouri Bd. of Prob. Parole, 585 F.2d 922, 925 (8th Cir.1978); Franklin v. Shields, 569 F.2d 784, 794-95 (4th Cir.1977); Coralluzzo v. New York State Parole Bd., 566 F.2d 375, 380 (2d Cir.1977); Note, Prisoner Access to Parole Files: A Due Process Analysis, 47 Fordham L.Rev. 260, 261 n. 12, 272 n. 93 (1978); American Friends Serv. Comm., Study of the Washington Board of Prison Terms and Paroles 26-28 (1977)).
[15] Other cases addressing the minimum due process have required similar safeguards. In Wolff, the United States Supreme Court held that the minimum requirements of due process must be observed in a disciplinary hearing for a serious infraction, where the sanction for the infraction is loss of good-time credit. Wolff, 418 U.S. at 557-58, 94 S.Ct. 2963. Wolff further specified the due process requirements: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Superintendent, 472 U.S. at 454, 105 S.Ct. 2768 (citing Wolff, 418 U.S. at 563-67, 94 S.Ct. 2963); accord Gronquist, 138 Wash.2d at 397, 978 P.2d 1083.